JOHN J. HOHMAN ᴇᴛ ᴀʟ. *v.* CHARLES G. HOHMAN
ᴇᴛ ᴀʟ., Exᴇᴄᴜᴛᴏʀs, ᴇᴛ ᴀʟ.

[No. 40, January Term, 1933.]

*Decided April 20th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*David Ash* and *Philip E. Wolfe,* for the appellants.

*J. Morfit Mullen* and *R. Contee Rose,* with whom was *Walter H. Buck* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

In this case a bill was filed by the children of John J. Hohman, a deceased son of Henrietta Hohman, against the executors of her will, and all the beneficiaries thereunder other than the plaintiffs and a deceased daughter for whom her executor is substituted.

The said testatrix in the fourth clause of her will set out the real and personal property owned by her and valued each item "for the purpose of making division of my estate among my nine children as hereinafter provided."

In the fifth clause she authorized and directed her executors "to appraise the whole of my estate, real and personal, not herein specifically bequeathed, the values of the properties mentioned in the fourth clause hereof shall control as to those, all other properties shall be valued at the then market value. After they have appraised the same, I authorize and direct them to divide the same into nine equal parts, one of which, I give, devise and bequeath unto each of my nine children, John J., Charles G., George A., Conrad P., Henry J., Frederick William and Franklin C. Hohman, Elizabeth E. Orem and Clara V. Keller, absolutely.

"In making the division of my estate I direct that the properties 2026, 2032, 2038 and 2040 E. Monument Street factory, plant and lot of ground northeast corner of Monument and Castle Streets, wood lot southeast corner of Monument and Castle Streets, four stalls in Belair Market and three stalls in North East Market, shall be allotted to my said sons, John J., Charles F., George A. and Conrad P. Hohman at the valuation of $100,000.00; if their combined four shares of my estate shall not amount to that amount after charging them with any debt, loan or advancement I may have made them, and with any sums of money my estate may have paid to them by reason of my endorsement or guarantee, I authorize and direct my executors to accept from my said four sons a mortgage on said properties devised and bequeathed them for the difference between said sum of $100,000.00, and the net value of their four shares; said mortgage to be for ten years and bear interest at the rate of five per cent. per annum. Any mortgage taken by my executors under the aforesaid power shall become part of the residue of my estate and divided as hereinbefore directed among my other children."

In the sixth clause she appoints her son John J. Hohman and her daughter Elizabeth E. Orem executors without bond,

and provides that: "For the purpose of carrying out the provisions of this my last will and testament, after said executors shall have valued and divided the residue of my estate and property as herein directed, I authorize and empower them to execute and deliver deeds to my said children of their respective shares so that each shall hold in severalty. I also authorize and empower my said executors to make sales of such parts of my estate, real and personal, as in their judgment shall be necessary to fully carry out the provisions hereof, after such sales have been reported to and finally ratified by the court having jurisdiction over my estate, and on the payment of the purchase prices, to execute and deliver deeds of the properties sold under the power aforesaid."

The will was dated February 3rd, 1916. In the following June testatrix executed the first codicil to her will, wherein she gave the one-ninth part previously given to her daughter Clara V. Keller, to her daughter Elizabeth E. Orem, trustee, and her successors, in trust to hold and manage, invest, and reinvest the same and to pay the income therefrom to the said Clara V. Keller, until such time as said trustee or her successors should be satisfied that it would be for the interest of said Clara to have the absolute title to her part, when the trustee and her successors are directed to convey same to her clear of the trust. It is also provided that the said Clara shall have the right to dispose of her part by will, and that in event of her death intestate before the conveyance to her, her part shall be conveyed to her surviving children, or if no children surviving, then to her heirs at law.

By a second codicil, dated February 3rd, 1921, she revoked the devise of No. 2032 East Monument Street to her said four first-mentioned sons, and devised the same, together with No. 2030 East Monument, to her daughter Clara V. Keller, for life, and after her death to said sons.

By a third codicil, dated June 23rd, 1922, John J. Hohman, one of the children mentioned in the fifth paragraph of the will, having died, she directs her executors to divide all of the properties referred to in said paragraph into eight parts instead of nine, seven of which she devises and be-

queaths to her surviving children other than Clara, and the remaining eighth part to Elizabeth E. Orem, trustee, and her successors in trust for her daughter Clara "for the uses and trust purposes as set forth in the first codicil * * *. All of said undivided one-eighth interests, however, to be held subject to the charge of a sum of money equal to the distributive share of my said estate which my son, John J. Hohman, would have received under the terms of my last will and testament if living at the time of my death, which I give, devise and bequeath unto John, Grace and Elizabeth Hohman, children of my deceased son, John J. Hohman, *per stirpes* and not *per capita,* said sum to be paid equally by all of the said undivided one-eighth interests within a period of five years from the date of my death, and on such payments as may be deferred from time to time during the said period, interest at the rate of six per cent. shall be paid thereon to said children in half yearly installments until full payment of their respective shares shall have been made." She also directs that if any of her children then living shall predecease her leaving children, the distributive share of the one so dying as devised and bequeathed in her will and codicils shall be void, but in lieu thereof places a charge upon the distributive share of the children living at the time of her death of a sum of money equal to the value of the distributive share in her estate which the child so dying would have been entitled to receive if living, "which I give, devise and bequeath unto the children of my said child so dying, *per stirpes* and not *per capita,* to be paid under the same conditions and provisions as herein provided as to the distributive interests of my son, John J. Hohman, deceased."

Charles C. Hohman is substituted for her deceased son as one of the executors.

The bill of complaint was filed on March 28th, 1932. It alleges that the testatrix died on March 16th, 1926; that letters testamentary were granted to the executors on March 22nd, 1926; that the estate consisted of a large number of ground rents as well as improved lots of land, together with stalls in markets in Baltimore, together with other property;

that the inventory filed in the orphans' court does not include any of said property, excepting certain alleged stock named therein amounting to $3,120, and cash amounting to $593.21; that plaintiffs have no knowledge of the extent of the estate and they desire discovery in relation thereto. It recites the listing and valuation of property in the will, and alleges that said properties have yielded large rents since the death of the testatrix, of which no account has been rendered to plaintiffs, and that it is necessary for the court to assume jurisdiction of said properties and appoint a receiver; that Clara V. Keller, a daughter of testatrix, died testate on April 16th, 1931, leaving neither husband nor child or children, having appointed Elizabeth E. Orem executrix of her will. It recites the provisions of the will directing appraisement and distribution and alleges that Charles G., George A., and Conrad P. Hohman have taken their distributive shares and enjoyed it ever since the time of the death of the testatrix, but that plaintiffs have received no part of their distributive shares; that by an agreement between the parties the said three sons agreed to pay the sum of $149,421.87 for the property allotted to them by the will, subject to the terms and conditions in said agreement set forth; it recites the provisions of the third codicil in regard to the charge of plaintiffs' legacies upon the other eight shares and the direction that plaintiffs be paid within a period of five years with interest, and alleges that, more than five years having elapsed, plaintiffs "are entitled to distribution in the premises, and to receive their respective shares of said estate; that they have frequently requested of said executors, discovery of the properties in said estate, as well as of the rents, profits and income thereof, as herein prayed; accounting of both the estate and the rents, income and profits thereof, and distribution of said estate; but said executors and each of them, have unlawfully failed to comply with said requests or any part thereof"; that plaintiffs "are ready, willing and able to do whatever equities may be of them required in the premises"; and that they desire the court to take jurisdiction of the estate that it may conserve the same and prevent the waste

or dissipation thereof; "that said executors having failed in the performance of their duties as executors, in not distributing said estate as by said plaintiffs' Exhibit No. 1 required, and in wrongfully withholding distribution thereof, and in refusing information in relation thereto, as aforesaid, and in unduly retaining the property of said estate," plaintiffs fear that unless the court assumes jurisdiction they will suffer irreparable loss.

The prayer of the bill is: (1) That the court assume jurisdiction. (2) For discovery. (3) For the appointment of a receiver *pendente lite*. (4) For the appointment of trustees to make sale, partition, and distribution. (5) For general relief.

On the filing of the bill the court passed an order appointing a receiver and directing the executors to turn over to him the assets of the estate.

On April 19th, 1932, the executors filed a motion to strike out the order appointing the receiver, on which the court passed an order striking out its previous order of March 28th, 1932, unless cause to the contrary be shown on or before May 5th, 1932; and on May 3rd, 1932, the executors filed an answer to the bill of complaint in which they admit that Charles G., George A., and Conrad P. Hohman have taken their respective shares of the estate, and aver that this was done with the knowledge and consent of the plaintiffs, and that the plaintiffs will be entitled to their distributive portions of the estate, which distribution they agreed should be deferred because a liquidation of the estate at forced sale would have resulted in a loss to the complainants and other beneficiaries of the estate; that full accounts of moneys collected have been kept; and that at all times the said accounts were available to the complainants upon any intimations from the complainants that they desired to inspect the same, and that no request or demand at any time has been made for said inspection, and that the complainants have, until the filing of the bill of complaint, acquiesced in and co-operated with the respondents in the management of the estate. An answer was also filed by all the other defendants in which

they adopt the answer of the executors. The receiver answered the order *nisi* striking out the order of appointment. In his answer he denies that the complainants had full knowledge of the property of the estate and of its management or that they had been able to obtain satisfactory information in regard to the estate; that they fear that the assets of the estate have been seriously diminished by the delay, and that a considerable portion of the estate has been wasted and lost; and that the executors' bond is only $500.

On May 28th, 1932, Charles G. Hohman, individually and as one of the executors, filed a petition in which he stated that all of the defendants have taken an appeal from the order of March 28th, 1931, and asking the court to pass an order superseding the order appointing a receiver, and thereupon the court superseded said order pending the decision on appeal. Subsequently the appellants dismissed the appeal, and the proceedings before the chancellor were resumed, and testimony was taken in open court. It appears from the testimony that on the death of the testatrix the other beneficiaries were dissatisfied with the valuation which she had placed on the factory property which she had allotted to three of the sons, thinking it too low, and all of them, including the three plaintiffs, agreed that all the assets of the estate should be valued as of the date of her death. This resulted in a written agreement dated March 22nd, 1926, which was filed as Defendants' Exhibit No. 1, which was signed and sealed by all the beneficiaries. It recites the provisions of the will and codicils; that it is the desire of all the parties that the intentions of the testatrix shall be fully carried out, and they agree that the provisions in the will fixing the valuation of the property shall be waived and that all the said property shall be taken and distributed according to its present market value, whether more or less, and that the children of the testatrix shall each have an equal one-eighth proportion of the said estate, all of said undivided one-eighth proportions, however, to be held subject to the charge of a sum of money equal to the distributive share of said estate which the deceased son, John J. Hohman, would have received if

living at the time of the death of the testatrix under her will, to be paid to his three children, said sum to be paid equally by all of the said one-eighth interests within a period of five years from March 16th, 1926, with interest on deferred payments in half yearly installments until full payment of their respective shares shall have been made. The parties in their individual capacities, and Elizabeth E. Orem as trustee for Clara V. Keller, further agree to assist the corporation of C. Hohman & Sons by pledging their credit in such form as may be necessary to obtain a loan not to exceed $15,000; the business of the three sons having been incorporated under that name.

Mr. R. Contee Rose testified that after the death of the testatrix he was called in by the executors, and thereafter he considered that he represented all the interests; that the estate consisted largely of real estate, there being very little personalty; that he had many conferences with John Hohman, one of the plaintiffs, and several with all of them, and when he dealt with John it was his understanding, from the meetings previously held with all three of them, that John represented the interests of the deceased father of the plaintiffs; that he saw John about the affairs of the estate twenty-five times; that John was in the employ of C. Hohman & Sons, and worked there until the time of the bankruptcy and witness would see him frequently; after that he came to the office of witness a number of times, and witness saw him at conferences about the estate called at the home of the testatrix after her death; that there were two or three conferences at the home of testatrix almost immediately after her death, and subsequent conferences when pieces of property were being disposed of; plaintiffs were consulted about it and in many instances asked to agree, which they did at conferences at witness' office of which there were quite a number; that witness was given instruction by those present at these conferences, including plaintiffs, with regard to appraising and disposing of the property; that he had an appraisal made by Harry E. Gilbert, chief assessor of the Appeal Tax Court of Baltimore City, and Martien & Co., real estate brokers, on

or about the 16th day of November, 1926; that at a meeting of all the beneficiaries except Charles, Conrad, and George Hohman, those present expressed the view that the provision of the will which fixed the valuation of the property to be taken by the absent brothers created an inequality in their favor, and those present thought that all ought to share equally in the estate; and they agreed that they should be treated alike, and delegated witness to present this question to the absent brothers; that witness did this, and they concurred in the view of the others, whereupon witness prepared an agreement which was signed by all the parties in interest, said agreement being Defendants' Exhibit No. 1.

Witness was then asked whether this agreement was carried out, and he answered: "Yes, it was. Q. In carrying it out, what did you do? A. In carrying it out we conveyed the property——." The witness was here interrupted by an objection, before completing the sentence, and the chancellor said: "I will leave it in subject to exception."

The witness further testified that the purpose of the appraisal was to determine the value of the shares of Conrad, George, and Charles Hohman, since the will provided that the property should be paid for by crediting their shares on the purchase price, and that the estate should take a mortgage for the difference; that he had the entire real estate of the estate also appraised in order to ascertain the credit that was to be given the three brothers on the purchase price, and they got the property allotted to them by the will. At this point the witness produced a settlement sheet of the sale of a piece of property known as the wood lot, which is one of the properties allotted to the three brothers, and which was sold by the executors for their account. Witness said plaintiffs saw that paper. This paper was offered in evidence as Defendants' Exhibit No. 2. It is dated May 27th, 1926, and purports to be an account of settlement between the executors and one Walter D. Pacey of lot at S. E. corner of Monument and Castle Streets. The plaintiff objected to the offer of this exhibit, and reserved an exception to its admission. De-

fendants also offered another paper referred to by the witness, which was filed as Defendants' Exhibit No. 3. The witness said this paper explained the settlement with the three brothers at the time the properties were conveyed, and shows the amount of mortgage which the Hohman estate was to take back, amounting to $61,443.30. It purports to give the appraised value of each of the items of the estate, shows a balance for distribution of $263,935.11, and then proceeds:

"Estate distributed as follows:

| | |
|---|---|
| One-eighth to Charles G. Hohman........$ | 32,991.96 |
| One-eighth to George A. Hohman........ | 32,991.96 |
| One-eighth to Conrad P. Hohman........ | 32,991.96 |
| One-eighth to Henry J. Hohman......... | 32,991.96 |
| One-eighth to Frederick W. Hohman...... | 32,991.96 |
| One-eighth to Franklin C. Hohman....... | 32,991.96 |
| One-eighth to Elizabeth E. Orem......... | 32,991.96 |
| One-eighth to Elizabeth E. Orem......... | 32,991.96 |
| Trustee of Clara V. Keller.......... | 263,936.11 |

"(Each of the above shares being subject to a charge of one-ninth of the balance for distribution, or $29,-326.19, payable to the children of John J. Hohman, i. e., John J. Hohman, Grace Hohman and Elizabeth E. Hohman Acworth.)

| | |
|---|---|
| Three shares of George A. Hohman, Charles G. Hohman and Conrad P. Hohman..............................$ | 98,975.88 |
| Less 3/8 of the 1/9 charge for the children of John J. Hohman.................. | 10,997.31 |

$ 87,978.57

"Allotment to George A. Hohman, Charles G. Hohman and Conrad P. Hohman, as follows:

| | |
|---|---|
| N. W. Corner of Chester and Monument Streets...........................$ | 30,000.00 |
| N. E. Corner of Castle and Monument Streets........................... | 77,500.00 |
| Wood lot S. E. Corner of Monument and Castle Streets ...................... | 31,400.00 |

Stalls, Nos. 300, 302, 304 and 306 Belair
Market.......................... 8,000.00
Stalls, Nos. 1, 3 and 5 Northeast Market. 6,000.00

$152,900.00

Less life interest of Clara V. Keller in
2030-32 E. Monument Street.......... 3,478.13

$149,421.87

Deduct aggregate of three shares of George
A., Charles G. and Conrad P. Hohman
(less charge for John's children)...... 87,978.57

$ 61,443.30"

And then defendants offered a paper marked Defendants'
Exhibit No. 4, to which plaintiffs objected and, objection
being overruled, noted an exception. The paper is dated
October 13th, 1930, and is signed and sealed by all the chil-
dren of the testatrix except Charles, Conrad, and George and
Clara (her trustee signed for her), and by three grandchil-
dren, the plaintiffs herein, as parties of the first part, and by
the executors as parties of the second part. It recites an
offer to Chas. G., George A., and Conrad P. Hohman for the
purchase of property northeast corner of Castle and Monu-
ment Streets (being part of the property allotted to them by
the will) at the price of $67,500, subject to the balance of
$45,875 upon a first mortgage to the Mutual Life Insurance
Company and a second mortgage to the Real Estate Trustee,
Inc.; that the estate holds a third mortgage of $61,443.30
upon said property; that said parties of the first part are
beneficiaries of said estate and indorsers of paper in the
amount of $25,000, upon which the Union Trust Company
of Maryland has obtained judgment; that it is believed to be
to the advantage of all the parties concerned that said prop-
erty be sold, and that the parties of the second part be author-
ized to accept in payment of said third mortgage to the
estate the difference between the purchase price aforesaid

and the balance due on said prior mortgages, to execute a release of said mortgage to the estate, and to apply any money that may be so received by them to the reduction of the said judgments. And in consideration of $5 and other good and valuable considerations, the said parties of the first part "do hereby give their consent to the sale hereinbefore referred to and do hereby authorize the said Charles G. Hohman and Elizabeth E. Orem, Executors of the Estate of Henrietta Hohman, to accept in payment of the third mortgage of $61,443.30 * * * the difference between the purchase price of $67,500 of said property and the balance of $45,875 upon the first and second mortgage to the Mutual Life Insurance Company and the Real Estate Trustee, Inc., respectively, and to execute and deliver a release of said third mortgage," and they further authorize the executors to apply any money so received for said third mortgage to the reduction proportionately of the said judgments against the parties to the agreement.

The witness Rose further testified that Defendants' Exhibit No. 3 was a compilation of the various interests of the estate; and that at the time this was prepared there was prepared Defendants' Exhibit No. 4; that Defendants' Exhibit No. 3 bears date October 13th, 1930, and was prepared on or about that date. At this point witness was asked whether in the meantime "any lots have been sold or if any ground rents have been redeemed," and his answer was, "Yes." Upon which plaintiffs objected and asked that the answer be stricken out. The motion was overruled, and exception reserved. The witness, continuing, said there were four ground rents redeemed and one piece of property sold. The four ground rents redeemed were 2217, 2219, and 2221 East Monument Street, which show a profit of $225 over the appraised value in 1926, and in Exhibit 3 the estate is credited with the gain; another ground rent, 2047 East Monument Street, was sold for $25 more than the appraisement, the estate being credited also with this gain in Exhibit No. 3. The fee-simple property Nos. 2040, 2042, and 2044 McElderry Street was sold for $1,000 less than the appraisement. This loss was

charged against the estate in Exhibit 3. These gains and loss were included in the computation in Exhibit 3 in arriving at the difference due by the three brothers of $61,443, for which they gave a mortgage to the estate. With the exception of the properties allotted to the three brothers, and the said four ground rents and the said McElderry Street property, no real estate had been sold; the remaining property being still held by the executors. The witness said that Defendants' Exhibit No. 3 was explained to the plaintiffs at the time they executed Defendants' Exhibit No. 4.

The defendants offered a paper marked Defendants' Exhibit No. 5, to which plaintiffs objected. The court overruled the objection and plaintiffs excepted. This paper is an agreement between the C. Hohman & Sons, Inc., the Union Trust Company of Maryland, the children and grandchildren of testatrix joining as guarantors. It is dated March 24th, 1926, and provides for the guaranty by the said guarantors of any loans the said bank may make to the Hohman Company to an amount not exceeding $15,000.

The defendants next offered a paper marked Defendants' Exhibit No. 6. It is an agreement between the plaintiffs and all the children of the testatrix, other than Charles, George, and Conrad, parties of the first part, and Charles, George, and Conrad, parties of the second part, dated April 25th, 1929. It recites the will and codicils of the testatrix and the agreement of March 22nd, 1926 (Defendants' Exhibit No. 1); that said Charles, George, and Conrad desire to take the property allotted to them in the fifth clause of said will at the appraised value thereof, $149,421.87, provided the estate will take a mortgage from them for the difference between said appraised value and the value of their shares in the estate, subject to a mortgage or mortgages aggregating $50,000, provided all the heirs, devisees, and distributees of the said estate assent thereto; that the said Charles, George, and Conrad have paid all the taxes and public charges on said property since the death of the testatrix. In consideration of one dollar and other good and valuable consideration, it is agreed between the parties of the first and second part that

the estate shall take from the said Charles G., George A. and Conrad P. Hohman a mortgage for the difference between the market valuation of the property referred to and the shares of the said Charles, George, and Conrad in said estate, and that said mortgage shall be subordinate to a mortgage or mortgages aggregating $50,000, and that the payment of the taxes and public charges upon said property since the death of the testatrix shall constitute a full settlement for the use and occupancy of said property from the date of the death of the testatrix to the date of the formal allotment of said property simultaneously with the agreement.

The witness further testified that the agreement by all the parties in interest was that the properties of the estate should be maintained out of the income until such time as they could be disposed of, but it was then contemplated they would be disposed of at the appraisal. The witness was asked why the properties still held had not been sold or divided. Objection was made by plaintiffs and overruled and exception noted. Witness answered that it was because everybody agreed that the property be not sold at forced sale but if possible at the appraised value; that they could not get the prices except with respect to the ground rents, which might have been sold, but as a large portion of the property was unimproved and the expense of maintaining it was to come from income, the ground rents were retained; that there was a definite, distinct, agreement among the whole family, and all the parties in interest, to divide the estate equally between them, and the further agreement that the property was to be appraised, and was to be sold at private sale; that John was told by witness more than once of the property that was on hand and the effort that was being made to liquidate it; that he was never refused any information.

On cross-examination this witness testified that he drew the agreement of March 22nd, 1926; that it was intended to operate only upon the three brothers who would be required to pay the market value for the properties allotted to them; that there was no reason at that time for doing more than that, because the agreement contemplated an immediate sale by the

executors and the division of the proceeds equally, and the plaintiffs would have gotten what would have been a one-ninth interest; that witness did not think it necessary to put any more in writing than was put in writing on March 22nd, 1926; that the agreement was written to bind the three brothers and to determine the amount of the mortgage to be given by them; that there was not any necessity at that time to put anything else in writing, as it was in the family and they all agreed about it; that the agreement contemplated that the executors would sell at the appraised value and divide the proceeds evenly, and the plaintiffs would share equally with the others.

Asked by counsel for plaintiffs whether witness meant that, at the time the agreement of March 22nd, 1926, was written, it was contemplated that there would be a division of the property, a distribution of the estate at that time, witness answered: "It was contemplated that the executors would sell the property at the appraised value and divide proceeds among the parties in interest." The witness further testified on cross-examination that the deed to the three brothers was not given until April 26th, 1929, when a mortgage was taken from them for the difference due by them to the estate; that this was a third mortgage; that at the time of testatrix' death the property was subject to a mortgage of $40,000, and the mortgage to the estate was taken subject to mortgages aggregating $50,000; that the brothers did some financing at that time, with the consent of the family; that the pork packing business of C. Hohman & Sons, Inc., was transacted on that property, but the brothers kept the title to the property in themselves; that the corporation failed in the fall of 1929, and there was an involuntary bankruptcy, but the property in question was not included in the bankruptcy schedule; that it was sold by the brothers, after the bankruptcy of the corporation, under the agreement filed marked Defendants' Exhibit No. 4; and that what was left over after paying prior mortgages was turned over to the estate, and by it, with the agreement of the family, applied to the family's obligation to

the Union Trust Company. Asked on cross-examination why the property allotted to the three brothers was not conveyed to them until 1929, the witness replied that it could just as well have been transferred to them in 1926. The three brothers treated this property as their own, paid the taxes and interest on the mortgage and expenses, and then, in 1929, when they wanted to raise some more money for themselves, they took title. So much of the answer was responsive to the question. A part of the answer which was in regard to what the agreement contemplated in regard to other property of the estate was not responsive. There was a motion by plaintiff to strike out the whole answer as irresponsive. There was no error in refusing the motion in this form.

The witness further testified on cross-examination that the net proceeds of the sale of the wood lot which belonged to the three brothers was turned over to them. The plaintiffs introduced and filed as Plaintiffs' Exhibits No. 5, No. 6, No. 7, No. 8, No. 9, No. 10, No. 11, and No. 12, correspondence between the witness and Mr. Thomas A. Murray, beginning with a letter dated March 27th, 1931, from Mr. Murray to the witness, informing him that Mr. Murray had been requested by the plaintiffs to represent their interests in the matter of the settlement and distribution of their grandmother's estate, and asking for a schedule of the estate; also calling witness' attention to the fact that no interest had been paid to Mr. Murray's clients upon their respective shares as required by the will; the reply of witness dated March 30th, 1931, advised Mr. Murray that witness would be glad to see him at any time that might be convenient; a letter of April 2nd, 1931, from witness to Murray suggested that Murray call on witness on April 6th. In another letter from Murray of June 2nd, 1931, he stated he had been waiting to hear from witness in regard to the estate and asking for any early conference. This was acknowledged by witness on June 4th with a promise that he would get in touch with Murray as soon as he got through trying a will case. Again on October 8th, 1931, Murray wrote insisting upon an early settlement of the estate, which was answered

by witness' secretary in a letter stating that witness was out of the city and would return about the 16th.

Proceeding under cross-examination, witness said he did not recall that there had been a personal call by Murray, but he had either seen him or spoken to him over the phone; that Murray demanded money, but did not get it, as the estate did not have it; that he does not recall any accounting being called for. Continuing under cross-examination, witness said that the three brothers filed a claim against the bankrupt corporation for money they had advanced, around $70,000 or $80,000, on which they got a small dividend, $4,452.16, which was turned over to the estate; that there had been no further effort to collect the mortgage deficiency.

Other witnesses offered by defendants were Elizabeth E. Orem and her husband, Dr. Orem, Henry Hohman, Charles G. Hohman, Frederick W. Hohman, and Frank C. Hohman. Their testimony supported the testimony of Mr. Rose as to the family agreement, when all were present, that the property be sold and equally divided, except the part allotted to the three brothers.

The three plaintiffs testified in rebuttal in their own behalf. They all admitted that they signed defendants' exhibits purporting to bear their signatures, and that they were present at family conferences at the time of and preceding the signing of Exhibit No. 1; also, that the several papers which they signed were read in their presence, or at least do not deny it, except that Mrs. Acworth said she was not present when one of the papers was signed by her brothers and sister, she did not remember which, and Mr. Rose only read part of it; said he did not have time to read it all; that she asked why her brother and sister were not there, and told him she did not have any understanding about it and did not know whether she should sign, but Mr. Rose said it would be agreeable to him if she signed, and she told him, "I would sign being he was counsel for the family, and I signed it." The witness said she never agreed to take her share of the estate in any other way than that expressed in the will. On cross-examination she said that, in connection

with signing these papers and generally in connection with the estate, she consulted her brother and did what he thought was best; that she relied on him.

Miss Grace C. Hohman testified that she never consulted with Mr. Rose about any of these exhibits; that she simply signed them; that she went along with her brother in the estate and depended on him whenever there was anything to be consulted about; that she never made any agreement to take her share of the estate other than that set forth in the will and codicil.

The general purport of John J. Hohman's testimony is that he did not know much about what was in the papers when he signed them; that there was not much disposition to explain them; and that, Mr. Rose being the family counsel, "we just took it for granted everything was O.K. and naturally we signed the papers." Witness said that he did not demand an accounting, but he approached Mrs. Orem for an advance of $1,500 "on my share and I received a reply that I would have to consult Mr. Rose, in effect, that as Mr. Rose had charge of the estate, she would have to refer me to Mr. Rose. Mr. Rose seemed willing at all times to give me an audience." That Mr. Rose said he did not see how they could get that amount before witness employed Mr. Murray; that witness asked Mr. Rose if he could not get the $1,500 to see what amount he could get, so finally they dwindled down to about $300; that Mr. Rose showed him figures amounting to about $53,000 which he represented as the value of the estate at the present time; that witness told him he was not satisfied with those figures; that the question of six per cent. interest witness and his sisters were entitled to according to the will was brought up, and Mr. Rose said he thought on account of what they had done for us we might waive that interest, and witness said he did not think so, and that he thought he would have to engage counsel; that he never understood that the estate was to be divided different from the way provided in the will and codicil, and he never made any agreement in relation to that. The witness admitted on cross-examination that it was the agreement that

the executors and Mr. Rose were to sell the property at the appraised value, but said he did not understand that the agreement was that the estate was to be divided equally.

It appears from the evidence that none of the parties in interest (other than the three brothers) except the plaintiffs have received anything from the estate.

At the conclusion of the testimony the plaintiffs moved: 1. That each and every piece of testimony in relation to an oral agreement of equality be stricken out, because said testimony is inadmissible, and for other reasons. 2. That testimony of the 1932 appraisement and Plaintiffs' (meaning Defendants') Exhibit No. 10 be stricken out, because said exhibit is inadmissible and for other reasons.

There was no error in the overruling of these motions. The first was too general. It is well settled that a judge is not required to go through the testimony to pick out testimony piecemeal which would come within such a general description. Besides, much of this testimony was admitted without objection, and was unobjectionable.

The testimony covered by the second motion was admitted without objection, even if objectionable.

The chancellor decreed:

(1) That after the death of the testatrix all the parties in interest entered into an agreement to the effect that the children and grandchildren of the testatrix, the parties to this case, should divide the estate of the said testatrix equally, and that it was a part of said agreement that the executors should sell the property of the testatrix, convert the same into cash, and distribute the same equally among the parties named in the will.

(2) That said contract provided that the assets of the estate should be sold at or about the value of the same as appraised by Messrs. Gilbert and Martien referred to in the evidence, but that no particular time was designated in said agreement for said sale and distribution.

(3) That, it appearing from the evidence that three of the children, Chas. G., George A. and Conrad P. Hohman, have received their shares of the estate in full, and are, in fact,

indebted to the estate, the remaining children of the testatrix parties defendant, and the plaintiffs, children of a deceased child, are entitled equally under said agreement to the entire estate, each of said five living children being entitled to one-sixth share and the plaintiffs, children of a deceased child, being entitled *per stirpes* to the remaining one-sixth share.

(4) That the court assume jurisdiction over the further administration of the estate, and that the parties plaintiff and those of the defendants having interests as aforesaid are entitled to have the sale, referred to in the evidence and found as part of a contract in the decree, made promptly or else to have the assets of the estate of said testatrix forthwith distributed in kind to the said parties entitled as aforesaid, after the payment of all proper and necessary costs and expenses to be determined by the court; and that, as it does not now appear whether or not the estate is divisible in kind, or should be sold at the present market values and the proceeds distributed equally to the parties entitled, the court reserve for future determination what further disposition should be made of the assets upon proper application being made to the court for its further order in the premises.

(5) That, as the court does does not find from the facts in this case that the executors have wasted or dissipated the estate or have failed in their duty, there is no necessity for the appointment of a receiver *pendente lite,* nor for the continuance of any such appointment heretofore made; and that the order or decree heretofore passed in these proceedings on the 28th day of March, 1932, appointing Philip E. Wolfe receiver *pendente lite* be rescinded.

(6) That, as he has not taken charge or possession of any of the assets of the estate, the said Philip E. Wolfe be discharged as receiver, without the necessity of stating an account and that he be released and discharged.

(7) That, it appearing that certain of the parties other than Charles G., George A. and Conrad P. Hohman have received cash advances from the estate, the court reserve for future determination upon a proper accounting to be had

herein, the details of the amounts to be credited to the different parties entitled.

The appeal is from that decree.

We are not disposed to disturb the findings of the chancellor arrived at after a most patient investigation. So much time and space has been taken in setting out the facts, which seemed important in the case, that we shall not use much additional space in giving the reasons for our conclusion.

The appellants in their brief raise the following questions:

1. Whether an agreement was entered into varying the terms of the will as to the distribution of the estate and hereunder:

(a) Whether there is any legally sufficient evidence of such an agreement;

(b) Whether it is competent to negative the terms of a will by oral agreement.

2. Whether the appellants are entitled to have their distributive share of the estate protected by a receiver.

3. Whether the appellants are entitled to the appointment of trustees to make sale, partition and distribution of the estate.

We have no doubt that it was competent for the parties, all being of age, to dispose of the property by agreement in a different manner than that provided by the will. It was explicitly so decided in *Surratt v. Knight,* 162 Md. 14, 158 A. 1.

There is much to be said for the proposition that the alleged oral contract in this case is not within the statute of frauds, even if it were conceded to be a contract by the parties for the sale of land. Viewed in that light, it might be forcefully argued that they were dealing with it in a joint adventure in which the equitable owners and the plaintiffs were partners. Assuming them to be such, as to that adventure, it has been distinctly held by this court that the statute of frauds is not applicable. *Bruns v. Spalding,* 90 Md. 349, 361, 45 A. 194; *Morgart v. Smouse,* 103 Md. 463, 468, 63 A. 1070. See also *Hoge v. George,* 27 Wyo. 423, 200 P.

96, 18 A. L. R. 484, 485. But it is not necessary here to decide that question.

The alleged oral agreement is not for a sale of the property by the parties to the agreement; but, in effect, is an agreement to postpone the division of the estate so that the executors may exercise the power of sale given them by the will. But even if the contract were within the statute, the bar of the statute would have been removed by part performance.

In *Hardesty v. Richardson*, 44 Md. 617, cited with approval in *Bruns v. Spalding, supra*, the court, in enforcing an oral agreement of a gift of land by a father to his son on the ground of part performance, in an opinion by Judge Alvey, quoted from *Neale v. Neale*, 9 Wall. 1, 19 L. Ed. 590, as follows: "The Statute of Frauds requires a contract concerning real estate to be in writing, but courts of equity, whether wisely or not it is too late now to inquire, have stepped in and relaxed the rigidity of this rule, and hold that a part performance removes the bar of the statute, on the ground that it is a fraud for the vendor to insist on the absence of a written instrument, when he had permitted the contract to be partly executed. And equity protects a parol gift of land, equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property."

In the present case appellees, relying upon the agreement, have foregone rights to a partition of the property and to income to be derived therefrom; have, jointly with appellants, permitted sales of part of the property for the joint account, and have permitted the income over a period of years, and the proceeds of property sold, to be used for the maintenance of the unproductive part of the estate and for other purposes agreed upon. In such circumstances, we think, it would be a fraud for appellants now to insist on the absence of a written agreement, even if the appellees were here as plaintiffs. Much more strongly can this be urged, when the alleged oral agreement is sought to be proved by appellees

in defense against a claim by appellants of liability on the part of appellees growing out of disputed relations of the parties to the property in controversy.

So the only important question is: Was there a contract, either written or oral, for the sale of the property other than that allotted to the three brothers, and for an equal division of the proceeds? Or, if not that, are the plaintiffs estopped by their acquiescence and general course of conduct to demand more than their proportionate part of what remains to be divided?

There was undoubtedly a written contract changing the provisions of the will as to valuations. That is Defendants' Exhibit No. 1. But if this stood alone and were interpreted literally, it would not change the manner of distribution.

However, testimony admitted without objection, including that of John J. Hohman, shows that, at the time this contract was signed, it was contemplated that there would be a prompt sale of the property at the appraised value, and division of the proceeds; and this testimony must be considered together with the written agreement. If the expectation of the parties had been realized, the form of the contract would have been immaterial. Whether it was divided into eight parts, and these eight together paid to the plaintiffs one-ninth of the net amount to be divided, or whether it was divided into nine parts in the first place, made little difference, because the net result would have been exactly the same. John J. Hohman, one of the plaintiffs, admitted that the agreement was that the property was to be sold at the appraised value, although he and the other plaintiffs said they did not understand that the manner of distribution was to be changed from that provided by the will and codicils. It is admitted by all the other plaintiffs that they relied upon their brother John J. Hohman. It is contended by plaintiffs that the testimony offered by defendants was not legally sufficient to prove a contract, because the witnesses did not give "acts, words, facts leading up to the making of such agreement," and that a statement that the parties "agreed" is a mere conclusion of the witness. But where the testimony is, as here, that the

618

parties agreed to do a definite thing, it is not necessary that the language used in making the agreement shall be given.

"The general rule, universally accepted is * * * that the substance or effect of the actual words spoken will suffice, the witness stating the substance as best he can from the impression left on his memory * * *. This rule is applicable to oral utterances in general * * * including admissions, conversations (whether as forming contracts or merely as admissions) and the like." 4 *Wigmore* (2nd Ed.), sec. 297; 1 *Greenleaf* (16th Ed.), sec. 441h; *Worthington v. State,* 92 Md. 222, 243, 48 A. 355; *Green v. State,* 96 Md. 384, 389, 54 A. 104; *Chambers v. Hill,* 34 Mich. 523, 524; *Bathrick v. D. P. & T. Co.,* 50 Mich. 629, 637, 16 N. W. 172; *Hayes v. Pitts-Kimball Co.,* 183 Mass. 262, 67 N. E. 249; *People v. Giro,* 197 N. Y. 152, 90 N. E. 432. We are not concerned here with the rule in the case of a bill for specific performance.

But apart from the oral testimony, the documentary evidence shows that all the parties acted on the understanding that there was to be no division of the property in kind except as to the share of the three brothers, but that it was to be sold and the proceeds divided; and if that was to be done, there could be no point in dividing the proceeds between the five remaining brothers and sisters and having them settle with plaintiffs for their one-sixth share. Manifestly the will contemplated a division in kind as to the eight children of the testatrix, who then were to settle with plaintiffs; but there can be no question on the evidence that the original plan, in this respect at least, was changed by the parties in interest.

There never has been any division of the property, nor has any one ever made a demand upon the executors to divide it. Mr. Murray on October 8th, 1931, was demanding that Mr. Rose "proceed without further delay to settle the Hohman Estate." But if the theory of plaintiffs is correct, the demand should have been upon the children of the testatrix. No one, other than the three brothers and the plaintiffs, has ever received a dollar from the estate. No demand was ever made by plaintiffs for the interest provided for by the will.

It is true John J. Hohman testified that the question of interest under the terms of the will was brought up in a conversation he had with Mr. Rose, but this was not until just before he retained Mr. Murray as counsel some time in the spring of 1931, more than five years after the death of the testatrix; whereas, if they were claiming under the terms of the will, interest was payable semi-annually from the date of her death. Mr. Murray in his letter of March 27th, 1931, calls attention to the fact that no interest has been paid to plaintiffs as required by the provision of the will. On no other theory than that all the parties had abandoned the original plan can the long delay in demanding interest be explained.

It is difficult to understand on what principle of equity the five children of the testatrix who have received nothing from the estate can now be called on to surrender their entire shares of the estate at its present value, in order that plaintiffs may receive a share based on the appraisement in 1926, with interest from that time, when the delay in making the distribution has been with the acquiescence of plaintiffs, and for which the defendants are no more responsible than they. It could not have been contemplated by the testatrix that her children should be chargeable to the plaintiffs except from the time of the distribution and in proportion to the amount received. Even if no definite agreement were proved, the principle of estoppel would protect them. If plaintiffs signed papers without understanding their contents, those who signed them and acted on the faith that all were bound should not suffer by reason of the negligence of plaintiffs. There is no charge of bad faith or concealment against the defendants or the counsel of the parties. The truth seems to be that all the parties in interest have suffered by reason of an unfortunate real estate speculation to which they all agreed; and by reason of their willingness to incur large obligations in support of the enterprise of the three brothers who now have no interest in the estate; that all the parties, plaintiffs and defendants, had one and the same counsel; and that the conduct of their affairs was left largely to him, all of them from

time to time approving of his acts. It is not necessary to agree with the learned chancellor that there was a definite contract. The result of the decree appealed from is the same whether it be held that plaintiffs are bound by a contract or estopped by their conduct.

On the remaining points, 2 and 3, it follows from what we have said that we concur in the views of the chancellor. We see no reason for burdening the estate with the extra costs of a receivership. Nor is there any immediate occasion for appointing trustees to sell. If there cannot be a division in kind, then we think a trustee or trustees should be appointed to sell the property for purposes of distribution, and that the interests of the parties should be protected by a proper bond.

We find no prejudicial error in any of the rulings on evidence.

*Decree affirmed, costs to be paid out of the estate.*