## ACME POULTRY CORPORATION *v.* JAMES MELVILLE

[No. 91, October Term, 1946.]

*Decided May 14, 1947.*

Appeal from the Circuit Court for Worcester County (HENRY, JR., C. J., JOHNSON and BAILEY, JJ.).

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hillary W. Gans* and *Franck C. Wachter,* with whom was *Thomas F. Johnson* on the brief, for the appellant.

*Fred W. C. Webb,* with whom were *Woodcock, Webb, Bounds & Travers, Godfrey Child* and *E. Dale Adkins, Jr.,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Worcester County in an action brought by the appellent to recover for property damage to its tractor-trailer combination sustained in a collision with the appellee's truck on the State highway, Route 113, between Berlin and Snow Hill, in Worcester County. The two occupants of the tractor, and the two occupants of the truck were killed in the accident. There were no eyewitnesses. At the conclusion of the plaintiff's case, the court (three Judges sitting) granted the defendant's motion for a directed verdict. The question presented is whether there was legally sufficient evidence to establish (1) negligence on the part of the driver of the defendant's truck, (2) that such negligence was the proximate cause of the collision, and (3) that the driver of the tractor-trailer was free from negligence contributing to the happening of the accident. This requires a careful analysis of the circumstantial evidence and the inferences that may properly be drawn therefrom. The evidence is virtually uncontradicted.

The collision occurred at about 12:20 A. M. in the early morning of January 26, 1945. Two Acme tractor-trailers had delivered goods to Exmore, Virginia, and were returning unloaded to Berlin. These vehicles were 11 feet in height, 8 feet in width, and about 36 feet in length. The witness Davis was driving the lead vehicle; his engine had been missing, and he asked the driver of the other vehicle, Ewell, to follow him. The second vehicle was 300 to 350 yards behind. It was a cold, windy night. Davis drove as fast as he could in fourth gear against a strong north wind, at a speed of from 30 to 40 miles per hour. The road is narrow and winding. It has a macadam surface 16 feet wide, with four foot dirt shoulder on each side, and a crown in the center from 4 to 6 inches in height. The center of the road is marked by a painted yellow band.

About 3 miles north of Snow Hill, there is a curve, known as "Poor House Curve," where the road bends from a northeasterly to a northwesterly direction through an angle of almost 90 degrees. When Davis came around the bend he saw the lights of an approaching vehicle, and some 300 or 400 yards north of the curve he passed a large truck proceeding south. Over objection, he testified that it was traveling at a speed in excess of 45 miles per hour. He testified that the truck driver did not dim his lights, and that the truck was slightly over the center of the road. Davis did not slacken his speed, but was compelled to pull off the macadam with his right wheels in order to pass. He kept driving in a northerly direction, but did not see the headlights of the following vehicle, although he slowed down to wait for it. Finally he turned around and drove back. As he approached "Poor House Curve" again, he saw a blaze. At the northern part of the curve he found the road blocked by two burning vehicles; one was the Acme tractor-trailer and the other was the Melville truck that he had passed. The truck was standing diagonally across the road, headed southwest, with its front wheels in the west lane and its rear wheels in the east lane. The tractor was stand-

ing diagonally in the west lane, headed northwest, forming an angle of about 90 degrees with the truck. The trailer was almost entirely in the east lane, headed slightly west of north. The fronts of both vehicles were crushed and locked together. There is a bank 2 or 3 feet high on the west side of the road, an open field with a line of telegraph poles and a barbed-wire fence on the East.

The witness Bowden, a night officer in Berlin, testified that he saw the Melville truck in Berlin shortly before midnight. One of its occupants inquired about the road to Cape Charles. The truck was loaded with furniture. It was a 10-wheel vehicle, about 8 or 9 feet wide, 11 feet in height and about 30 feet long.

The witness Moore, a farmer whose house is about 400 yards from the scene of the accident, testified that he had returned to the house after tending baby chicks when he heard a loud noise like an explosion, and looking out the window saw a blaze on the curve. He dressed and went out and found Davis there, and several other men. The fire from the burning gasoline was so hot they could not go near the vehicles. They put in a call for the Berlin Fire Department.

Sheriff Lynch was the next man on the scene. He testified that he arrived at about 12:30. It began to snow a few minutes after he arrived. The witness Kerbin, State's Attorney and a member of the volunteer fire department at Snow Hill, arrived at the scene of the accident at about 12:30 to 12:40, a few minutes ahead of the fire-truck. It snowed "all the time we were out there, practically"; but the snow was blowing off the road. They threw water on the fire from a 300 gallon tank; but were unable to extinguish it.

Officer Sherwell, of the Maryland State Police, was called to the scene by Mr. Kerbin to investigate the cause of the accident in line of duty. He arrived between 1 and 1:15. He testified in detail as to the position of the vehicles and the extent of the damage. He stated that the point of impact on the tractor had been at the

right front wheel, and "had progressed inwardly toward the center of the cab." The entire front of the truck had been crushed. Both vehicles were burning and had not been moved. Within the "V", or angle, formed by the tractor and the truck there was "a large amount of debris * * * scattered within this 'V' from the Northerly part of the East line and growing more in amount until it reached the 'V' itself where the largest amount of debris was and where we later found the body of one of the men from the Melville truck." The debris consisted of "parts of the truck cab." The tar on the road beneath the cabs was burning. He made an investigation for skid marks with a flash light and an emergency flare at the rear wheels of both vehicles, but found none. In response to a question by the court he testified, over objection, that tires like those on the vehicles in question would leave marks on a macadam road "if they were pushed sideways."

The appellant contends that the physical facts support an inference that the Melville truck was on the wrong side of the road immediately prior to the collision, and that this caused the accident. The appellee, on the other hand, contends that the evidence does not rise above mere speculation and conjecture. In *Shafer v. State,* 171 Md. 506, 509, 515, 189 A. 273, 274, this court, speaking through C. J. Bond, said: "Evidence offered to support a contrary explanation, that the collision was caused by negligent driving of Ogden, consists entirely of testimony of marks on the road seen by witnesses arriving at various times after the accident. Reliance upon such evidence alone for judicial determination of movements leading to a collision, and for imposition of a liability for damages, is beset with dangers, but there would seem to be no room for doubt that in some cases it might amount to proof of negligence. * * * It would be legally sufficient or insufficient in a particular instance according as it might or might not rise above speculation and conjecture on what had taken place, and so afford the rational basis needed for an adjudication that the defend-

ant's agent was guilty of negligence which produced the accident. * * * The fact to be proved is, of course, not merely the existence of negligence. 'The mere existence of negligence at the time and place of an injury does not give a right of action. The injury must have been caused by it.' *United Rys. & Electric Co. of Baltimore v. Perkins,* 152 Md. 105, 110, 136 A. 50, 52." In that case it was held that the evidence was legally insufficient to establish that a tire mark, slightly over the center of a concrete road 20 feet wide, was made by the truck involved in the accident, or, passing that difficulty, that "negligence in violating the rule by extending over the center * * * did in fact cause the accident," where there was clear room for passage "unless one or the other swerved."

In *State, for Use of Balderston v. Hopkins,* 173 Md. 321, 196 A. 91, strongly relied upon by the appellee, the collision, a "side-swipe," occurred in a cloud of dust, and the vehicles were some 60 feet apart after the accident. The court stated that "there were no marks on the road to indicate just where the trucks were immediately before or at the time of the accident," and distinguished *Wolfe v. State,* 173 Md. 103, 194 A. 832, where the point of collision was established by glass and other debris.

In *Gloyd v. Wills,* 180 Md. 161, 23 A. 2d 665, the court stated that the evidence of tire marks would permit a finding that the defendant's car was partly in the center lane of a three lane highway at the time of the collision, but held there was no legally sufficient evidence that this was the proximate cause of the accident. As in the Shafer case, there was abundant room for passage in the proper lane.

In *Finney v. Frevel,* 183 Md. 355, 37 A. 2d 923, this court held (two Judges dissenting) that testimony as to skid marks, not definitely identified as having been made by the defendant's car, was legally insufficient to establish excessive speed.

We think these cases are distinguishable. In the case at bar the testimony of the police officer, if believed, would permit the inference that the point of collision was in the East lane, where the rear end of the truck and the entire trailer remained after the collision. The absence of skid marks, according to the officer's testimony, indicated an absence of lateral motion, and the circumstances that snow was falling and that water had been thrown on the burning vehicles and road, at the time he made his investigation, would only affect the weight of his testimony. The position of the front of the truck and the tractor in the west lane can reasonably be explained by his testimony that the impact was not head-on, but at a slight angle, on the right front wheel of the tractor, which would force a movement to the west. While there were no skidmarks to substantiate this movement, their absence is explained by the burning tar and gasoline under the fronts of both vehicles, and the trail of debris clearly supports an inference that such movement took place before the vehicles came to rest diagonally across the roadway. Compare *Sheer v. Rathje,* 174 Md. 79, 83, 197 A. 613.

The appellee argues that both vehicles may have been in the West lane, on the inside of the curve, or straddling the crown, and that the rear ends of both vehicles may have been "catapulted" into the positions where they were found, without leaving any marks. If this were possible, it would merely furnish an alternative theory which the jury might consider. We think the physical facts justify a rational inference that there was no lateral movement of the rear ends, and that this is enough to permit an inference that both vehicles were in the East lane, upon the "preponderance of probability." *Baltimore & O. R. Co. v. Shipley,* 39 Md. 251, 257. Compare *Singer Transfer Co. v. Buck Glass Co.,* 169 Md. 358, 181 A. 672; *Williams v. State,* 161 Md. 39, 48, 155 A. 339; *Grzboski v. Bernheimer-Leader Stores,* 156 Md. 146, 148, 143 A. 706; *Burke v. Baltimore City,* 127 Md. 554, 556, 96 A. 693; see also *Marshall v. Conrad,* 118 W. Va. 321, 191 S. E.

553; *Flowers v. Dolan,* 155 Pa. Super. 378, 38 A. 2d 429; *Tracy v. Guibbini,* 20 Cal. App. 2d 216, 66 P. 2d 675; *Anderson v. Kearly,* 312 Mich. 566, 20 N. W. 2d 728.

If both vehicles were in the East lane, this would not not only point to negligence on the part of the Melville truck, Code, Supp. 1943, art. 66½, secs. 162, 163, but would indicate that such negligence was the proximate cause of the accident. *Pitcher v. Dougherty,* 177 Md. 145, 8 A. 2d 917. In the case at bar, unlike the situation in the *Shafer* and *Gloyd* cases, *supra,* the Melville truck would have obstructed the entire lane and have left no room for passage. Because of the curve, the lights of neither vehicle would have disclosed the true situation until they were in close proximity. Whether the driver of the Acme truck, in the exercise of due care under the circumstances, should or could have driven off the road to the right, as suggested, would present a question for the jury. Compare *Davidson Transfer & S. Co. v. State,* 180 Md. 63, 71, 22 A. 2d 582.

We are fortified in our conclusion by a decision in the United States District Court for the District of Maryland, in a suit growing out of this same accident. Melville was sued by the widow of the passenger (relief driver) of the Acme tractor-trailer, and recovered a judgment upon substantially the same record. This case was affirmed upon appeal by the Circuit Court of Appeals for the 4th Circuit. *Melville v. State of Maryland, to Use of Morris,* 155 F. 2d 440.

While the testimony as to the speed and course of the Melville truck at the time Davis passed it is not entitled to great weight, we think that such testimony was not too remote and was relevant and admissible. *Taxicab Co. v. Hamburger,* 146 Md. 122, 125 A. 914; *Melville v. State of Maryland, to Use of Morris, supra. Wigmore, Evidence* (3d Ed.), sec. 382, note 10, and cases cited. We also think that the State Police officer was sufficiently qualified to express an opinion that the tires of the vehicles would leave marks if they were pushed sideways. The investigation of motor vehicle accidents is one

374

of the principal duties of the State Police. In any event, the determination of the qualifications of an expert must be left largely to the judgment of the trial court. *Bresnan v. Weaver,* 151 Md. 375, 380, 135 A. 584.

*Judgment reversed with costs, and case remanded for a new trial.*