GOODWIN ET AL. *v.* LUMBERMENS MUTUAL CASUALTY CO.

(Four Appeals in One Record)

[No. 70, October Term, 1951.]

*Decided January 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*David P. Gordon* and *A. Frederick Taylor*, with whom was *Charles C. Hartman, Jr.*, on the brief, for appellants.

*Max Sokol*, with whom were *Dickerson, Nice & Sokol, Edwin T. Dickerson, Deeley K. Nice* and *Melvin J. Sykes*, on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

Raymond T. Goodwin had his automobile insurance with the appellee. Coverage D in his policy was entitled "Medical Payments" with a limit of $500.00 for each person, and the coverage was described in the body of the policy as follows: "To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon, entering or alighting from the automobile, if the automobile is being used by the named insured or with his permission."

After the occurrence of the accident hereinafter discussed, the four women who were injured, and their husbands, sued the appellee in four separate actions, each brought by a wife and husband, and each alleging a liability under Coverage D. It was stipulated at the trial that three of the women, Mrs. Goodwin, Mrs. Blum and Mrs. Cooper, each sustained medical expenses in the amount of the policy limit of $500.00, and Mrs. Kronau sustained medical expenses in the amount of $259.00. A trial was had in the Superior Court of Baltimore City before Judge Moser, sitting without a jury. He filed the following memorandum after holding the cases *sub-curia* for a few days: "The court finds that none of the plaintiffs were 'entering or alighting' into or from the Goodwin automobile at the time they were struck and injured, and therefore the court's verdict is in favor of the defendant in all cases." From the judgments for costs entered on these verdicts, the plaintiffs all appealed. The cases were heard together

below, and were combined in one record and heard together here.

There is some dispute about the facts, but this, as will hereafter be shown, is based largely upon statements made to an insurance adjuster shortly after the accident, to the testimony of the officer who examined the scene of the accident shortly after it had occurred, and to some photographs which were taken. There does not seem to be any direct contradiction in the testimony given at the trial.

Mr. Goodwin, who was the owner of the car, had parked it on the evening of July 21, 1950, on the west side of St. Paul Street, between Chase and Eager Streets in Baltimore City, facing north. Across the sidewalk from the place where it was parked, a new building was being constructed, and the sidewalk was fenced off in such a way that the doors on the left side of the car could not be opened. St. Paul Street is a one-way street for northbound traffic. The occupants of the car, seven in number, attended a wedding party at the Belvedere Hotel on Chase Street, just west of St. Paul Street, and, at about 1:30 in the morning of July 22, they started back to the car in order to return in it to their respective destinations. Mr. Goodwin testified that he and Mr. Cooper and Mr. Kronau were detained in the hotel a minute or two after the ladies left, and he gave the keys to the car to his daughter, Mrs. Blum. All of the doors of the car were locked. The four ladies started down St. Paul Street from Chase, and Mr. Goodwin and Mr. Cooper were behind them and nearer to Chase Street, when the accident happened. What became of Mr. Kronau does not appear, and he did not testify in the case.

When the women reached the car, Mrs. Blum opened the right front door with the key, leaned in the car and reached around for the purpose of releasing the tab so that the rear righthand door could be opened. At that time, Mrs. Goodwin, mother of Mrs. Blum, was standing behind her, holding the right front door open;

Mrs. Cooper had her hand on the handle of the right rear door with the evident purpose of opening it as soon as Mrs. Blum had released the lock, and Mrs. Kronau was standing behind Mrs. Goodwin at or about the edge of the front door. While the women were in this position, and while Mr. Goodwin and Mr. Cooper were walking down St. Paul Street, about 25 feet away and about in line with the right edge of the car, another automobile came diagonally across St. Paul Street and struck the bumper or the right rear fender of the Goodwin car, and then swept along its right side, knocking all of the women down and carrying Mrs. Kronau on its front bumper to the point where it stopped. The place where Mrs. Kronau finally fell, or was lifted from the bumper, was 41 feet from the rear end of the Goodwin car, according to the measurement made by the officer. The striking car when it stopped was in the second lane of traffic, counting east from the west sidewalk, with, however, the left rear projecting somewhat over into the first lane. Mrs. Blum was knocked under the Goodwin car, and Mrs. Cooper was in the roadway beside it. Mrs. Goodwin was found lying in front of the Goodwin car approximately 26 feet 2 inches north of its rear, according to the measurements of a police officer. All of them were more or less severely injured.

The appellee does not agree that any of these women were at the time of the accident in the exact positions to which they testified, and to which Mr. Goodwin also testified, but this disagreement is not based upon positive evidence contradicting the testimony of the plaintiffs. The police officer who arrived shortly after the accident occurred, said that the information he got from some of the women was that they were standing in the street close to the Goodwin car when the other car came up and struck them. He did not remember anyone saying they were about to enter the car, but he did not ask them about this. He did not remember that any of them had said that the front door of the car had been open when they were struck, but there is nothing to show

that he ever asked that. He said that, in his opinion, the door was not struck while it was open, but it was damaged because some of the bodies were thrown against the automobile. That, of course, is an opinion given after an accident, and, while it is given by a traffic officer who is accustomed to viewing accidents, it is not by any means equal to a statement of fact.

Some photographs were taken shortly after the accident happened, and it is contended by the appellee that the photographs of the Goodwin car indicate that it was struck while the door was shut because of an indentation on the front door, and a continuous line on the side of the car, which, it is contended, was caused by the bumper of the striking car. The line itself seems to extend upward, and we are unable to say, without any testimony at all, that it was made by the bumper or that it looks as if it were made by the bumper. There was some damage to the Goodwin car in front of the door, which, it is claimed, was made by the door's swinging into it, and there is testimony that before the car could be taken away, this front door had to be tied because it would not shut. We are unable to draw sufficient inferences from these facts to overcome the definite testimony of all of those present that the door was actually open, or partially open, at the time the accident occurred.

In a statement given by Mr. Goodwin on August 1, 1950, about ten days after the accident, he said: "The women were standing in the street on the right side of the car and *Mr. Cooper* was in the act of opening the door on the right side." He also said: "The only door of my car that was open was the right *front* door, and that was only partially open. *Mr. Cooper* was in the act of opening the door to allow the women to get in", and: "None of the women were in the car or entering the car at the time of the accident. They were in the street." Mrs. Cooper, in a statement given by her on August 7, 1950, said: "Mrs. Goodwin, Mrs. Blum, Mrs. Kronau, my husband and I were standing in the street alongside the car. My husband was in the act

of opening the right *rear* door when suddenly a north-bound car struck four of the women." When she was asked about this at the trial, she said she was at the rear door and had her hand on it, and that her husband was not there. She said she was confused at the time she signed the statement and it was not correct in that respect. Mr. Goodwin said in his testimony that Mr. Cooper was walking with him at the time when he was about 25 feet north of the car and the accident occurred. Mr. Cooper himself testified that he was walking about 20 to 25 feet away from the car along with Mr. Goodwin, and that he was not opening the door and was not going to drive. There is some contradiction between the statements themselves because Mr. Goodwin, in his statement, said Mr. Cooper was opening the front door, and Mrs. Cooper, in her statement, said he was opening the rear door, but in their testimony, both said that Mr. Cooper was not there and that Mrs. Cooper had hold of the rear door. Mr. Goodwin also said that the women were not entering the car, they were all standing in the street. They were, of course, all standing in the street, according to the testimony of everyone. There is no testimony that even Mrs. Blum had either of her feet off the pavement. Whether they were entering the car is, however, not a question of fact alone, it is a mixed question of law and fact with which we have to deal. Mr. Goodwin should not be bound by an opinion on such a question, which he can hardly be competent to decide.

The appellee contends that as the trial judge did not say what facts he found, and as his statement that "none of the plaintiffs were 'entering or alighting' into or from the Goodwin automobile" is a mixed decision of law and fact, we are bound to take on appeal the version of the evidence most favorable to the appellee. It bases this theory upon the similarity of our Rule 9 and Rule 52 of the federal rules of civil procedure, and

on certain cases which have been decided by the federal courts with respect to Rule 52. Our Rule 9 provides that the judgment of the trial court shall not be set aside on the evidence unless clearly erroneous, and the federal rule says that findings of fact by the trial judge shall not be set aside unless clearly erroneous. In the construction of this part of the federal rule, some of the federal courts have said that the view of the evidence must be taken which is most favorable to the prevailing party below, but such statements are not applicable to situations like the one before us. They are made in connection with the duty of the appellate court not to reverse on findings of fact. We have found no case in which there was no finding of fact by the trial judge, and in which the appellate court then itself passed upon the facts with any special weight given to the evidence favorable to the prevailing party below.

As an illustration of the correct application of the principle, we find the U. S. Court of Appeals for the 9th Circuit, in the case of *Ruud v. American Packing & Provision Co.*, 177 F. 2d 538, 540, saying: "Defendant's argument is presented on the apparent theory that the action is triable *de novo* in this court but this is an appellate court and our function is to review alleged errors of law that may have been committed by the trial court. We are not at liberty to substitute our judgment for that of the trial court, and on appeal that view of the evidence must be taken which is most favorable to the prevailing party, and, if when so viewed, the findings are supported by substantial competent evidence, they should be sustained." The Circuit Court of Appeals for the 8th Circuit, in the case of *Anderson v. Federal Cartridge Corporation*, 156 F. 2d 681, 684, said: "The findings of the court are presumptively correct and will not be set aside unless resulting from an erroneous view of the law or are clearly against the weight of the substantial evidence, and in considering this question we view the evidence in the light most favorable to the prevailing party, the burden being on the unsuccessful

party to show that the evidence compelled a finding in his favor. *United States v. Perry,* 8 Cir., 55 F. 2d 819; *United States v. Nelson,* 8 Cir., 102 F. 2d 515; *American Ins. Co. v. Scheufler,* 8 Cir., 129 F. 2d 143; *American Alliance Ins. Co. v. Brady Transfer & Storage Co.,* 8 Cir., 101 F. 2d 144. As we do not consider the credibility of the witnesses, nor the weight that should be given to their testimony, it results that if there is substantial evidence to sustain the court's findings, they can not be set aside unless entered on a misconception of the applicable law." Also, in the same circuit in the case of *Grandin Grain & Seed Co. v. United States,* 8 Cir., 170 F. 2d 425, 428, the court said: "It must be remembered that, upon review of a judgment in a non-jury case, the prevailing party is entitled to have the evidence viewed in the light most favorable to it, and that the findings of the trial court, 'unless clearly erroneous,' may not be set aside by this Court." Similar statements are made in the case of *Maryland Casualty Co. v. Cushing,* 7 Cir., 171 F. 2d 257; *Cleo Syrup Corporation v. Coca-Cola Co.,* 8 Cir., 139 F. 2d 416, 150 A. L. R. 1056; *Peterson v. Denevan,* 8 Cir., 177 F. 2d 411, and *Paramount Pest Control Service v. Brewer,* 9 Cir., 177 F. 2d 564.

It is apparent from these cases that the most favorable light ruling is only used as a part of the method of applying the rule that the decision of the trial court on the facts must be respected unless clearly erroneous. Before a determination can be made that such a decision is clearly erroneous, the evidence must be viewed in a light most favorable to the prevailing party below. If, viewed in that light, there is substantial evidence to support the factual conclusion, then the appellate court should accept that conclusion. But if there is no such substantial evidence, then the conclusion may be designated as arbitrary, and may be disregarded. If the trial court does not say what it finds to be the facts, no presumption as to them arises merely from the decision. Obviously, then, if there is no factual statement or conclusion, there is no reason for the appellate court to

examine the record with an evidentiary slant in favor of the appellee in order to sustain a non-existent presumption.

We have in this case no definite evidence that the door was closed, or that the women were not in the positions they and Mr. Goodwin stated in their sworn testimony at the trial. All we have to the contrary are the two statements made to the insurance adjuster, in themselves contradictory, and afterwards denied, the negative testimony of the officer, and the photograph, which is of very little value as proof. Under such circumstances, and in the absence of any specific finding of fact by the trial court, we cannot sustain its conclusion as one of fact because it is clearly not supported by competent sustaining evidence. If the trial court did base the decision on the facts, we are in the position described by the Supreme Court in the leading case of *United States v. United States Gypsum Co.*, 333 U. S. 364, 395, 68 S. Ct. 525, 542, 92 Law Ed. 746, where the court said, in discussing Rule 52: "Since judicial review of findings of trial courts does not have the statutory or constitutional limitations on judicial review of findings by administrative agencies or by a jury, this Court may reverse findings of fact by a trial court where 'clearly erroneous.' The practice in equity prior to the present Rules of Civil Procedure was that the findings of the trial court, when dependent upon oral testimony where the candor and credibility of the witnesses would best be judged, had great weight with the appellate court. The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Since our conclusion is that the evidence shows that the injured women were placed, at the time the accident happened, where the evidence of the plaintiff shows they were, the next question before us is the construction of Coverage D of the policy. This question is, were the

four women, or any of them, in any of the four positions insured by the appellee. That is, were they in the automobile, were they upon the automobile, were they entering the automobile, or were they alighting from the automobile? It may be conceded they were not in the automobile, nor were they alighting from it, and, therefore, the proposition is narrowed to a determination whether they were *upon* the automobile, or whether they were *entering* it.

A technical approach to the problem necessarily leads to difficulty. Viewed in such a light, a person might have to be actually partly in, or upon, the car before he could be considered to be entering it. But he is covered not only when "in" or "upon", but also while "entering". The terms are not synonymous, although sometimes two of them may cover the same situation. A person getting in might be completely inside the car. In that case, he would be both "entering" and "in". On the other hand, he might be partly in and partly out, in which case he would be covered by the word "upon", and also might be covered by the word "entering", or by the word "alighting", depending on which way he was going. We think Mrs. Blum was *upon* the car as well as *entering* it, and we think the other women were all in process of getting in the car so far as they were able under the circumstances. One door had just been unlocked, the other was in process of being unlocked. Mrs. Goodwin was holding the front door, Mrs. Cooper held the handle of the rear door, ready to open it as soon as it had been unlocked from the inside, and Mrs. Kronau was at the edge of the front door, ready to follow in as soon as the others had gotten out of the way. They had all completed their approach to the car, they were not coming up to it with the purpose of entering it, they had reached it, and they were actually engaged in the process of getting in. That is what Coverage D intended by "entering".

There are not many cases from other jurisdictions, probably because this coverage is of recent origin, and

they are not particularly helpful. In a Connecticut case, *Ross v. Protective Indemnity Co.,* 135 Conn. 150, 62 A. 2d 340, the plaintiffs had stopped their car and gotten out of it and were standing behind it engaged in conversation when they were struck by another car. The court said they had completely alighted and were not in or upon the car and were not entering it. In *Lokos v. New Amsterdam Casualty Co.,* 197 Miss. 40, 93 N. Y. S. 2d 825, affirmed Sup., 96 N. Y. S. 2d 153, the driver of the car heard a scraping noise, stopped and walked to the front of the car and found one end of the bumper was dragging. He was fastening it so he could proceed when he was struck and injured. The court held that he was upon his automobile and could recover. In the case of *Madden v. Farm Bureau Mutual Auto. Ins. Co.,* 82 Ohio App. 111, 79 N. E. 2d 586, the driver had a flat tire, had substituted the spare and was putting the damaged tire into the rear trunk when he was struck. The court in that case considered the purpose and intention of the plaintiff, and held that part of his body was "in" the trunk of the car. In *New Amsterdam Casualty Co. v. Fromer,* D. C. Mun. App., 75 A. 2d 645, a driver pulled to the curb and walked back to see if he had struck another car. While returning to his own car, and when he was 6 feet to the rear of it, he was struck. The court said he could not be considered as entering his car when he was still 6 feet from the rear of it, and that an intent to enter did not convert an approach into an entry. In the latest case which has been brought to our attention, *Sherman v. N. Y. Casualty Co.,* R. I., 82 A. 2d 839, the plaintiff had parked his car, gotten out and noticed it was moving backward. He tried to stop it, but he was forced back. He put his knee upon the bumper and held on to the tail light with his right hand and to the registration plate with his left, in an effort to arrest the movement. In this he was unsuccessful and had both his legs broken when the car finally crushed him against a wall. The court held that a broad and liberal construction should be given

to the words "in" and "upon", that the words used in the clause were tied in which use of the car, and held that the plaintiff was upon the car at the time he was injured.

Under the circumstances of this case, we think the plaintiffs in these cases are entitled to recover under Coverage D of the insurance policy. The judgments, therefore, will be reversed and separate judgments entered in favor of the respective plaintiffs.

> *Judgments reversed with costs. Judgment entered in favor of Mildred K. Goodwin and Raymond T. Goodwin against Lumbermens Mutual Casualty Company, a body corporate, for $500.00 and costs.*

> *Judgment entered in favor of Effie Cooper and Webster K. Cooper against Lumbermens Mutual Casualty Company, a body corporate, for $500.00 and costs.*

> *Judgment entered in favor of Virginia Blum and Howard E. Blum against Lumbermens Mutual Casualty Company, a body corporate, for $500.00 and costs.*

> *Judgment entered in favor of Marie Kronau and Earl Kronau against Lumbermens Mutual Casualty Company, a body corporate, for $259.00 and costs.*

HENDERSON, J., filed the following concurring opinion, in which MARKELL, J., concurred.

I accept the court's rather broad interpretation of the word "entering", as used in the policy, to cover the case of Mrs. Kronau, who was certainly not touching the parked automobile but had finished her approach to

it. Since the physical facts show unmistakably that all of the plaintiffs were at least as close as she was to the parked car, I think the contradiction in the evidence becomes immaterial. However, I do not agree with the court's interpretation of the rules of court, as applied to the facts in the case, and I think it may lead to misunderstanding and confusion in subsequent cases.

While the rule requiring a trial judge to state the grounds of his decision* does not contemplate an elaborate, formal or extensive review of the law or the facts, if it is to serve a useful purpose the opinion must state the findings in more detail than a general verdict, and must at least indicate whether the decision is based on law or fact. The opinion in the instant case does not comply with the rule and I think we should say so. On the other hand, the fact that the opinion does not measure up to the rule cannot enlarge or diminish the scope of our review. If that were so it would be within the power of the trial court to shift its burden to this court, or deprive one party or the other of the kind of review they have a right to expect when they elect trial by the court.

In the instant case, I think the trial court might properly have found the door of the parked car was still closed at the moment of impact. The police officer, an expert in such matters, gave that as his considered opinion, based upon an examination at the scene of the accident. In *Acme Poultry Corp. v. Melville*, 188 Md. 365, 53 A. 2d 1, we held that testimony of that character was sufficient to take a case to the jury, even where there was no eye-witness to the accident. Here the testimony of the eye-witnesses was contradicted by the physical facts and also by inconsistencies in statements made shortly after the accident. If the trial court had found that the door was shut, and disbelieved the eye-witnesses, I think we could not say he was clearly wrong. But this court's finding as to the law makes the fact immaterial. Judge Markell concurs in the view here expressed.