564 A.2d 100

**Yale RUDO, et ux.**

v.

**Lois KARP, et al.**

**No. 103, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 3, 1989.

---

426

Yvette N. Diamond (Stanley Alpert and Cohen and Alpert on the brief), Baltimore, for appellants.

Lois Karp (Scott B. Karp and Law Office of Eugene Glazer on the brief), Baltimore, for appellees.

Argued before GILBERT, C.J., and GARRITY and BLOOM, JJ.

GILBERT, Chief Judge.

This appeal is concerned with the Maryland Uniform Gift to Minors Act (MUGMA), Md.Ann.Code, Estates and Trusts Article, §§ 13–301 to 13–310 inclusive.

Yale Rudo and Lois Karp were divorced in 1980. Mrs. Karp was awarded custody of the parties' two minor sons, Jason and Marshall.

Sometime in early August 1982, Mr. Rudo opened MUGMA savings accounts for his two sons with Fairfax Savings and Loan Association. Yale Rudo was named as the custodian for each of the boys. Approximately six months later, February 4, 1983, the accounts were closed.

Rhona Rudo, having married Yale Rudo, opened two MUGMA savings accounts with American National Building and Loan Association on April 12, 1985. Each account was in the name of one of her husband's sons with Rhona as custodian. Nearly three weeks later the accounts were closed.

Mrs. Karp, on behalf of her minor son Jason, and Marshall Rudo, in his own right, he having reached his majority, brought suit in the Circuit Court for Howard County, seeking an accounting from their father and Rhona.

Estates Art. § 13–302 provides, in pertinent part:

"(a) An adult may, during his lifetime or by will, make a gift of ... money ... to a person who is a minor on the date of the gift or distribution:

.    .    .    .    .

(3) if the subject of the gift is money, by paying it to a broker or a financial institution, for credit to an account in the name of the donor, another adult, a guardian of the minor, or a trust company, followed by the words: "as custodian for [name of minor] under the Maryland Uniform Gift to Minors Act."

Section 13–303(a) provides:

"A gift made in the manner prescribed in this subtitle is irrevocable and conveys to the minor indefeasibly vested title to the ... money, but no guardian of the minor has any right, power, duty, or authority with respect to the custodial property except as incorporated in this subtitle."

The custodian is authorized by § 13–304 to manage the property and to pay over to the minor or expend for the minor's benefit so much of the custodial property as the custodian deems advisable. When the minor reaches majority, it is the duty of the custodian to pay over to the donee the balance of the property. § 13–304(d).

Patently, the Rudos did not comply with the statute. They defended their non-compliance by asserting that they never intended to make a gift under the provisions of MUGMA.

Judge Cornelius F. Sybert determined from the evidence that the accounts at both Fairfax and American National were governed by MUGMA. The judge found as a fact that the monies withdrawn by Yale Rudo from Fairfax were the "same funds ... later used to open the American National accounts." The chancellor ordered Yale and Rhona to produce an accounting of the respective accounts opened in their name as custodian.

Aggrieved by the order of the circuit court, both sides have appealed. The Rudos pose a quaternion of issues for our view. Mrs. Karp asks but a single question. We shall discuss each issue in the order raised, adding such additional facts as may be necessary.

## I.

"The Circuit Court for Howard County erred as a matter of law when it failed to consider whether the appellants found the requisite donative intent to make a completed gift."

The record reflects that the Fairfax account for Jason was opened on August 5, 1982; Marshall's account was opened the next day. Both accounts, as shown by the "Notice of Certificate Maturity," clearly were subject to the provisions of MUGMA. Rhona Rudo's applications for share accounts with American National conspicuously inform her that they are "Custodian Savings Share Account[s] Under Maryland Uniform Gift to Minors Act."

Yale Rudo's testimony before Judge Sybert manifests that he was aware that the Fairfax accounts had been opened under MUGMA.

Based on the evidence disclosed by the record, we conclude that Judge Sybert was not clearly erroneous in finding that the Fairfax and American National accounts were opened subject to the provisions of MUGMA. See Md.Rule 8–131(c). Our inquiry, however, does not end there.

An understanding of the meaning of the word "gift" is helpful to our discussion of whether there was a valid gift by Yale Rudo to his minor children. A gift may be defined as a gratuitous, voluntary transfer of real, personal, or mixed property made without consideration by one person to another. To constitute a valid gift under Maryland law, there must be:

1) A clear intent on the part of the donor;

2) A gratuitous, unconditional transfer of possession;

3) An immediate transfer of title;

4) A delivery of the title by the donor to the donee or his or her guardian or representative; and

5) An acceptance of the gift by the donee or his or her guardian or representative.

*See Rogers v. Rogers,* 271 Md. 603, 607, 319 A.2d 119 (1974); *DiTommasi v. DiTommasi,* 27 Md.App. 241, 246, 340 A.2d 341 (1975).

"[T]he donor must intend not only to deliver possession, but also to relinquish the right of dominion. If a gift has reference to a future time when it is to operate as a transfer, it is only a promise without consideration, and cannot be enforced in law or equity." *Berman v. Leckner,* 193 Md. 177, 182, 66 A.2d 392 (1949); *Whalen v. Milholland,* 89 Md. 199, 201, 43 A. 45 (1899). The intention of the donor may be expressed in words, actions, a combination thereof, or inferred from the circumstances. *Berman,* 193 Md. at 177, 66 A.2d 392.

The law requires that the evidence demonstrate "that the donor *clearly* and *unmistakably* intended *permanently* to relinquish all interest in, and all control over the *res* which is the subject of the gift." *DiTommasi,* 27 Md.App. at 248, 340 A.2d 341 (emphasis in original). *See also Dorsey v. Dorsey,* 302 Md. 312, 318, 487 A.2d 1181 (1985). Once the gift is completed, it is irrevocable. The burden of proof rests on the donee to establish each and every element of a gift. *Dorsey,* 302 Md. at 318, 487 A.2d 1181; *Grant v. Zich,* 300 Md. 256, 275, 477 A.2d 1163 (1984).

The appellants Rudo maintain that the openings of the accounts under the MUGMA provisions were mistakes and, that as soon as the errors were discovered, action was taken to remedy the wrongs. Further, Mr. and Mrs. Rudo contend that the initial reasons for opening the accounts in the names of Mr. Rudo's minor children was twofold:

1) Yale Rudo desired to leave a "legacy"[1] to his sons in the event of his untimely demise. He testified that he believed that he was opening the accounts in joint names, subject to his order alone. Mr. Rudo told the court that he

---

1. The word "legacy" is obviously misused. Mr. Rudo said he meant to leave a monetary gift to his sons, but only upon the older Rudo's demise and if the monies were still on deposit.

thought he could settle a monetary sum upon his sons without the delay and expense of probate.

2) The accounts were admittedly opened with the intention of avoiding federal taxation of the interest on the money.

■ Yale Rudo's intent to make an irrevocable gift to his children is manifested by his own testimony. He told the chancellor that, upon discovering that the accounts were opened under the provisions of MUGMA, he closed them on the next banking day. That assertion, however, is not correct. In response to a subpoena duces tecum, Fairfax produced a microfiche history of the accounts of Yale Rudo's minor sons. Those records revealed that the accounts were closed on February 1, 1983, not the day after they were opened as testified to by Yale Rudo. Moreover, Judge Sybert was certainly not required to believe Mr. Rudo, particularly after the documentary evidence from Fairfax was received into evidence. Those documents demonstrated that Mr. Rudo's memory was faulty.

With respect to those accounts, the evidence is that they remained open for almost six months. Approximately $1200 in interest was paid. That sum, while "pocketed" by Yale Rudo was reported to the taxing authorities on Jason's and Marshall's income tax returns, respectively. Based on that evidence Judge Sybert's finding that "irrevocable gifts were in fact made" to the minors is supported by "clear and convincing evidence." *Berman*, 193 Md. at 182, 66 A.2d 392.

## II.

"The order of the Court below was inconsistent with the finding of fact and against the weight of the evidence."

■ There is conflicting testimony between the witnesses with respect to the Fairfax accounts. Of course, conflicts in testimony is neither unusual nor rare in the trial of cases. Fact finders, be they judges or jurors, are often called upon to resolve those conflicts and to believe or disbelieve all or

any part of any witness's testimony. When a case is tried non-jury, the rules of court permit an appellate court to examine the trial judge's fact finding, but those findings may not be set aside unless they are clearly erroneous. Md.Rule 8–131(c). An appellate court gives due deference to the trial judge's opportunity to view and assess the credibility of witnesses. It is the trial court who can see and weigh demeanor and mannerisms, as well as the myriad of other nuances, that go into assessing credibility. An appellate court will not substitute its judgment on the facts for that of the trial judge "but will only determine whether those findings are clearly erroneous in the light of the total evidence." *Colburn v. Colburn,* 15 Md.App. 503, 292 A.2d 121 (1972). *See also Stewart v. Stewart,* 256 Md. 272, 260 A.2d 71 (1969); *Burroughs Int'l Co. v. Datronics Engr's, Inc.,* 254 Md. 327, 255 A.2d 341 (1969). In making the assessment as to whether the trial judge was clearly errone- ous, the appeals court views the evidence in the light most favorable to the party prevailing in the trial court. *Good- win v. Lumbermen's Mutual Casualty Co.,* 199 Md. 121, 85 A.2d 759 (1952). When so viewed, if there is substantial evidence to support the trial judge, his or her conclusion is accepted. *Burroughs,* 254 Md. at 338, 255 A.2d 341. If, however, the trial judge's conclusions are not based on substantial evidence, his or her finding is clearly erroneous and reversible. *Goodwin,* 199 Md. at 128, 85 A.2d 759; *Burroughs,* 254 Md. at 338, 255 A.2d 341.

A review of the record in the instant case discloses that there was substantial evidence that Yale Rudo intended to, and in fact did, open MUGMA accounts, on behalf of his two sons in August of 1982, closing those accounts in February 1983. Mr. Rudo explained to his ex-wife, Mrs. Karp, that he desired to take care of his sons financially. The American accounts were also opened under the MUG- MA provisions of the Code but were closed and never reopened.

We think the evidence sufficient for Judge Sybert to find that Yale Rudo intended to and did make an irrevocable gift

to his sons in August 1982. Although another fact finder might conceivably arrive at a different conclusion, that is not the test we are required to apply under Md.Rule 8–131(c). On the record before us, we are unable to declare that Judge Sybert was "clearly erroneous."

## III.

"In the alternative, the findings of the court below were inconsistent in that if an irrevocable gift was made, there cannot be a further gift of the same monies."

■ The short answer to the issue is that, once a gift is made under the provisions of MUGMA, the custodian may be required on petition by the minor or other person specified in the statute to produce an accounting of the funds. Estates Article, § 13–308.

The Fairfax accounts in the instant case were determined by Judge Sybert to be a gift under MUGMA. As custodian of these funds, Yale Rudo is required to produce an accounting as directed by the court. Estates Art. § 13–308(b). The American National accounts, opened and closed by Mrs. Rudo, were also MUGMA accounts. Yale Rudo directed those accounts to be closed because his wife, not he, was named as custodian.

■ When the Fairfax accounts were closed in February 1983, the combined balance of Jason's and Marshall's accounts totaled $44,512.85. The aggregate of the two accounts opened at American National was $45,340.00. Given the similarity in the figures, we are unwilling to declare as clearly erroneous Judge Sybert's conclusion that the Fairfax accounts were the genesis for the American National account. Furthermore, because Mrs. Rudo, in opening the American National accounts, named herself as custodian for the minors, Judge Sybert correctly ordered her to produce an accounting of the funds she deposited in American National and then withdrew. Mrs. Rudo voluntarily assumed custody of the funds that Judge Sybert found to have been the Fairfax accounts. Having assumed the posi-

tion of custodian, albeit briefly, Mrs. Rudo must account for the funds that passed through her hands. Estates Art. § 13–308(b). There is no provision in the MUGMA that exonerates a custodian from complying with § 13–308(b) simply because of the brevity of the custodial act.

## IV.

"The court erred in permitting the business records of Fairfax Savings and Loan Association to be admitted into evidence."

■ The Fairfax records pertinent to this case were destroyed by a flood in 1983. Microfiche of the same records, however, were available and admitted into evidence by Judge Sybert. Copies of the microfiche records were in the form of computerized printouts. They reflected the history of accounts at Fairfax. The printouts were prepared by F.A.S.[2] in Philadelphia and N.C.R.[3] in Columbia, Maryland, service centers for the banking community.

Ms. Mary S. Kowalski, vice-president of banking operations for Fairfax, testified that the computer records were made on a daily basis, "contemporaneously" with the transactions made at Fairfax, thereby creating a history of accounts. The daily records formed a transaction journal which were proofed against the bank's daily general posting ledgers. At the end of each calendar quarter, a history printout was made and then transferred to microfiche.

Md.Ann.Code Cts. and Jud.Proc. Art. § 10–101 controls the admissibility of business records. Section 10–102 provides that business records that are reduced to "microfilm, microcard, miniature photographic, ..." which accurately reproduce the original are admissible "when satisfactorily identified." *See Cooper v. State*, 41 Md.App. 392, 397 A.2d 245 (1979); *Perez v. State*, 7 Md.App. 452, 256 A.2d 369 (1969). Ms. Kowalski's testimony confirmed the prepara-

---

**2.** F.A.S. means Financial Accounting Services, Inc.

**3.** N.C.R. is National Cash Register Company.

tion and accuracy of the microfiche. There was no error in the trial court's admitting the evidence.

## V.

The cross-appeal, as we have previously stated, raises the solitary question of whether Judge Sybert erred in not finding that the American National accounts were separate and distinct gifts to the Rudo children. In sum, the appellees want two gifts, not one. For the reasons we have set forth in the discussion under Issue III of this opinion, we perceive no error in Judge Sybert's findings. The cross-appeal is devoid of merit.

JUDGMENT AFFIRMED.

APPELLANTS TO PAY ⅘ OF THE COSTS. APPEL-LEES TO PAY ⅕ OF THE COSTS.