## GEISLER *v.* EMINIZER

[No. 375, September Term, 1964.]

*Decided August 25, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, SYBERT and BARNES, JJ.

*William O. Goldstein* and *Robert Hess* for the appellant.

*Joseph I. Huesman,* with whom was *Thomas F. Dempsey* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

We are concerned on this appeal with the monetary transactions between a grandfather (Roscoe Eminizer) and a grandson (Robert Geisler). In all there were twelve transactions (totaling $6,457.13) involving five different items or matters. The grandfather asserts that all were loans. Except for the first one, the grandson insists that all were gifts. The record indicates that four of the items or matters were loans, but it is not possible to ascertain from the record before us the nature of the fifth matter.

The first item in point of time involved the transfer of $300 in cash from the grandfather to the grandson, who was then in the Coast Guard, to buy an automobile for his use while off duty. It is conceded that this was a loan, that $100 was repaid prior to suit and that the balance due was $200.

The second matter (though not in chronological order) involved the issuance of four checks over a period of ten months to the grandson aggregating $640.13 [1] with which the grandson was to construct a pile driver to enable him to go in business for himself after he had completed his duties in the Coast Guard. All of these checks were marked "loan pile driver" by the grandfather after the cancelled checks had been returned to him by the bank. According to the grandfather, they constituted a loan to be repaid after the grandson began working regularly with the pile driver. But, according to the grandson, these transactions were gifts.

The third item concerned the issuance of a check for $500 (exhibit ten dated December 23, 1961) to the grandson while he was still in the Coast Guard to be used to extricate himself from a situation he had gotten into. As to this check (which the grandson endorsed to his attorney) it was stipulated that if the attorney were called as a witness he would testify that the $500 was a loan; that he had charged his client a fee of only $25 for services rendered in solving the problem; and that he

---

1. This sum consisted of a check (exhibit five dated December 7, 1961) for $100; a check (exhibit two dated June 30, 1962) for $240.13; a check (exhibit three dated August 20, 1962) for $150; and a check (exhibit four dated September 5, 1962) for $150.

gave the balance of $475 to the grandson believing that he would return it to the grandfather. This was never done, but the grandson testified that the attorney told him that the grandfather had said the money was to be used to purchase the machinery he needed to operate the pile driver.

The fourth item, represented by a check for $50 (exhibit seven dated July 19, 1962), was said by the grandfather to have been a personal loan, but the grandson claimed that it was a gift.

The fifth matter (the second transaction chronologically) concerned the purchase of a boat by the grandfather for $4800 and the repairs subsequently made thereon totaling $267. The grandson was in the Coast Guard at the time the boat was bought, but he worked in a private boatyard when he was on leave. The grandfather told his grandson on one of his off-duty periods that he wanted to buy a boat to go fishing in and asked him to look for one. Shortly thereafter the grandson found a boat he thought his grandfather should see and the grandfather, after looking it over, purchased the boat. It was paid for by a check (exhibit one dated July 22, 1962) on which the grandfather belatedly wrote "boat money." Although he referred to it as "my boat," the grandfather caused the boat to be titled in the name of the grandson so that, as the grandfather testified, no one could take it away from him (the grandson) in case he (the grandfather) should die. But, according to the grandson, the boat was so titled because his grandfather had never done anything for him and wanted him to have something. As to this, it was stipulated that if the broker who sold the boat (the broker was also the owner of the marina where the boat was purchased) were called as a witness he would testify that the boat was a gift from the grandfather to the grandson and that he (the broker) made out the application for title in the name of the grandson at the direction of the grandfather. The evidence with respect to who had possession of the boat and as to the use of it from time to time is meager and indefinite. The grandfather testified that the boat was kept in the marina where it was purchased until the grandson and the owner of the marina "had some words." When that happened the marina owner ordered the grandson to move the boat and he (the grandson) "carried it up" Stoney Creek

to a wharf near where he resided. The grandfather also testified that he used the boat whenever he wanted it and that he and his friends had gone out on the boat with the grandson "a couple of times." While it is likely that the grandson also used the boat whenever he desired, there was no testimony to that effect. The last time that the grandfather used the boat was on a weekend in June of 1963. On that occasion, having discovered that the boat was in bad condition, he docked it on his return at a boatyard in Bear Creek to be repaired. But the grandson, although he knew why the boat was placed in dock and that the grandfather intended to pay for the repairs, caused the Coast Guard to remove the boat from the boatyard and moor it at the wharf in Stoney Creek. The grandfather stated that he had not seen the boat since. Nor had he asked to use it because he deemed it useless since the grandson had told him that the boat was not his. The grandson testified that the boat was "still around" but there was no evidence as to whether it was usable. Following the purchase of the boat, the grandfather on four separate occasions over a period of more than nine months paid for repairs totaling $267. The grandfather testified that he gave the grandson a check for $135 to buy another steering gear but that the money was not used for that purpose. While the grandson does not deny that he was given money to buy a new steering gear, he claimed that the cost thereof was included in a check (exhibit two dated June 30, 1962) for $240.13, which, however, the grandfather claimed was money loaned for another purpose (see footnote one on page one). According to the grandfather the checks for $30 (exhibit nine dated December 2, 1961) and $50 (exhibit six dated June 21, 1962) and presumably the check for $52 (exhibit eight dated August 12, 1962), totaling $132, were also given for boat repairs. All were belatedly marked "loan," but according to the grandson all of them were gifts for his personal use or for boat equipment.

Aside from his testimony relative to the monetary transactions, the grandson sought to show that the relationship between him and his grandfather had always been amicable until the grandfather, having married a third wife after the transactions hereinbefore described had taken place, sought recovery of all monies the grandson had received. Even then, although the

grandfather testified that he had always assumed that he would be repaid when the business affairs of the grandson warranted repayment, it is not clear that the grandfather ever demanded repayment of all the monies—particularly those expended for the boat and the repairs thereto—he later claimed to have been loans.

On the evidence presented, the trial court, without filing a statement of the reasons for its decision, concluded that all transactions (except the item of $135 for a new steering gear which was either overlooked or purposely ignored) were not gifts but loans and entered judgment in favor of the grandfather against the grandson for $6322.13. We cannot say that the lower court was clearly in error in finding that the transfer of $1390.13 [2] from the grandfather to the grandson constituted loans and not gifts. But we think it is clear that the court was wrong in finding that the monies expended for the boat and boat repairs, totaling $4932 (exclusive of $135 for the steering gear), constituted a loan. Whatever the transactions concerning the boat may have been they were obviously not loans. but it is not possible, on the record before us, to determine the exact nature of these transactions.

### (i)

In order for there to have been a valid gift *inter vivos* of the $1390.13 there must have existed, in addition to the delivery and acceptance thereof, an intent on the part of the grandfather that title to as well as possession of the money was to be absolute in the grandson and was to go into immediate effect. *Berman v. Leckner,* 193 Md. 177, 66 A. 2d 392 (1949) and cases cited therein. As to this sum, the evidence supported the finding of an intent to make a loan rather than a gift. Moreover, it was proper for the court to examine the facts to ascertain what was intended and not to be governed by the lack of formal evidence of indebtedness. *Cf. Howard v. Hobbs,* 125 Md. 636, 94 Atl. 318 (1915). See *Snowden v. Reid,* 67 Md. 130, 8 Atl. 661

---

**2.** This sum of $1390.13 includes the balance due of $200 on the automobile loan, the $640.13 for the pile driver, the $500 (minus the counsel fee of $25) use for pile driver machinery, and the $50 for personal use.

(1887), where the question was also whether or not a particular transaction was a gift or loan and one of the factors considered in determining that the transaction was a loan and not a gift was the fact that the check evidencing the transfer of funds was marked as a loan. The judgment must therefore be affirmed to the extent of $1390.13.

(ii)

As above indicated, the money expended for the boat and boat repairs (aggregating $5067 including the steering gear), absent positive evidence of the purpose or intention of the parties, presents a problem that cannot be determined without guessing. We shall therefore remand the case to the lower court insofar as the boat is concerned, pursuant to Maryland Rule 871 a, for further proceedings, including the taking of additional evidence, to the end that the court may fully examine the characteristics of these transactions at law or in equity and determine the nature of the dealings with respect to the boat.

> *Judgment affirmed to the extent of $1390.13 and reversed as to remainder; and the case is remanded for further proceedings and a determination of the nature of the transactions with respect to the boat; ¼th of the costs to be paid by appellant and ¾ths by appellee.*