# WOODDY *v.* WOODDY

[No. 27, September Term, 1973.]

*Decided October 11, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Edward J. Skeens* for appellant.

*Richard J. Clark*, with whom was *Edward S. Digges* on the brief, for appellee.

24

BARNES, J., delivered the opinion of the Court.

This is the fourth appeal during the last three years involving the marital difficulties of Louise R. Wooddy, the appellant, and Arthur O. Wooddy, the appellee, either directly or indirectly.[1] It involves a portion of a decree, dated December 13, 1972 of the Circuit Court for Charles County (Mathias, J.) in Equity, in dismissing, *with prejudice*, the claims of Dr. Wooddy, the former husband, alleged in his bill of complaint — the bill praying, *inter alia*, for the sale in lieu of partition of Lot No. 3 of Block B of the subdivision known as Oakwood Road in the First Election District of Charles County (the subject property), for one-half of the mortgage payments, taxes and other bills and assessments paid by him. Dr. Wooddy reserved for consideration of the court *in banc*, and the court *in banc* (Ralph W. Powers, C. J., McCullough, Couch, JJ.) vacated the portion of the decree of December 13, 1972 dismissing Dr. Wooddy's claims with prejudice and ordered on January 29, 1973 that the claims be dismissed *without prejudice* so that the parties might present the matter to the auditor. Mrs. Wooddy filed a timely appeal from this order of the court *in banc*. We have concluded that the order of the court *in banc* was correct and will affirm it.

In Dr. Wooddy's bill of complaint, after alleging the provisions of the deed of January 31, 1951 whereby the parties — then husband and wife — acquired the subject property as tenants by the entireties and that the parties had been divorced *a vinculo matrimonii* by a decree of the Circuit Court for Charles County dated October 18, 1966 by virtue of which the parties owned the subject property as tenants in common which could not be partitioned and divided between them without material loss or injury, it was alleged that Mrs. Woody had continued to occupy the subject property after the date of the divorce decree without accounting to Dr. Wooddy for any rent or for mortgage

1. The prior cases in this Court are Wooddy v. Wooddy, 256 Md. 440, 261 A. 2d 486 (Jan. 9, 1970); Wooddy v. Wooddy, 258 Md. 224, 265 A. 2d 467 (May 13, 1970); and Wooddy v. Mudd, 258 Md. 234, 265 A. 2d 458 (May 13, 1970).

payments, yearly tax assessments and insurance premiums which Dr. Wooddy had paid in order to protect his interest in the subject property. In the prayers for relief, Dr. Wooddy prayed for a sale of the property in lieu of partition and a division of the proceeds of sale between the parties and then as follows:

> "(2) Pass a Decree requiring the Defendant, Louise R. Wooddy, to pay to the Plaintiff an amount equal to one-half ($1/2$) of the fair rental value of the said land and premises accounting from October 18, 1966.
>
> (3) Pass a Decree requiring the Defendant, Louise R. Wooddy, to pay to the Plaintiff an amount equal to one-half ($1/2$) of the mortgage payment, taxes and insurance, and other bills and assessments on the land and premises mentioned herein, paid by the Plaintiff from October 18, 1966.
>
> (4) For such other and further relief as this Honorable Court deems to be fair and just."

In her answer to the bill of complaint, Mrs. Wooddy alleged several defenses to the payment of any part of the claims asserted by Dr. Wooddy, including estoppel, laches, no ouster of Dr. Wooddy by Mrs. Wooddy and, so far as the mortgage payments were concerned, that a prior order required Dr. Wooddy to make those payments while the subject property was occupied by the children of the parties and that the children continued to occupy the premises with their mother and, further, that the present mortgage on the premises was obtained by Dr. Wooddy on February 20, 1959 for his own personal investment purposes, so that he is estopped for this reason to demand any part of the mortgage payments from Mrs. Wooddy.

The case came on for trial before Judge Mathias on September 18, 1972. The parties, through their counsel, stipulated that the subject property could not be partitioned or divided without loss or injury and then the following took place between Judge Mathias, Mr. Clark, counsel for Dr. Wooddy, and Mr. Skeens, counsel for Mrs. Wooddy:

"MR. CLARK: That would be the Plaintiff's case based on stipulation.

THE COURT: Very well, call your first witness, Mr. Skeens.

MR. SKEENS: In this regard, Your Honor, I think what I would do at this point would be to ask for a dismissal of the relief prayed on Numbers 2 and 3 in the Equity action of the bill of complaint made by the Plaintiff, Your Honor, since no proof having been presented on those issues.

THE COURT: Mr. Clark?

MR. CLARK: If the Court please, it is my feeling that the Court has no jurisdiction to rule on that point, but beyond that I would withdraw or dismiss any claims for fair rental or for one half of the mortgage or taxes at this time, Your Honor.

THE COURT: Very well, Mr. Clark, you may indicate that Paragraph 2 and 3 of the Bill of Complaint are dismissed.

MR. SKEENS: Is that with prejudice, Your Honor?

THE COURT: Yes, sir.

MR. CLARK: I do not intend to dismiss it with prejudice, Your Honor.

MR. SKEENS: I think it should be, Your Honor. The case is here, ready for trial in which he can present his evidence if he has any to present rather than a voluntary dismissal.

THE COURT: Are you contending that a man doesn't have a right to one voluntary dismissal?

MR. SKEENS: I asked you if it was with prejudice and you said 'Yes.'

THE COURT: Well, I indicated that, but now he has raised the question that every attorney has a right to one voluntary dismissal. Do you disagree with that?

MR. SKEENS: I think that this is not a

voluntary dismissal. This is a matter that we are coming here before The Court, trial on the merits. We are not here in a preliminary matter or motion. This is a case called for trial on the merits. That includes all relief in question.

THE COURT: The Court is going to grant the relief with prejudice and because it is at issue and we are ready to try it and there is no sense to try it over again. You have an opportunity to present it this morning and it wasn't presented so it will be with prejudice as to 2 and 3. That is one half interest of the rental or one half mortgage payment, of taxes paid since 1966."

The court *in banc* in its written opinion stated:

"The Trial Court's decision, as it now stands is fatal to the Plaintiff's claim for return of contribution. Rule 535, *Maryland Rules of Procedure*, provides that a dismissal of a non-jury equity proceeding operates as an adjudication upon the merits, unless otherwise specified.

"Under Article 16, Section 154, supra, in a partition proceeding the Court may decree a sale of the property and a division of the proceeds among the parties, *accordingly to their respective rights.*

"Subtitle BR of the *Maryland Rules of Procedure* provides for the judicial sale of property. Under Rule BR 6, following such a sale the trustee submits a report of sale and the Court passes an order nisi. After publication, the Court passes a final order of ratification and the 'papers' are referred to the Court Auditor.

"Maryland Rule 595 ('Auditor'), gives the auditor the authority to audit and settle accounts under an Order of Court. The interested parties should present the matter to the auditor, whereupon a time and place is determined for the purpose of producing evidence. At the hearing, the parties must put forth all applicable documents.

Specifically, the accounts shall be presented in the form of debits and credits. In addition, oral testimony may be necessary. Then the auditor submits an account and the Clerk passes an order nisi. On the same day, the auditor must give notice of the filing to all parties. The parties have fifteen (15) days to file exceptions to the auditor's report. If there are such exceptions, the Court will rule on the issues. If there are no exceptions filed within the time limit, the Clerk will enter a final order of ratification. This appears to be the usual practice before this Court.

"Reading Article 16, Section 154, Rule BR6 and Rule 595 together, this Court in banc is of the opinion that the proper and usual procedure for the sale of the property was not followed here. A dismissal of the prayer for reimbursement denied the Plaintiff recovery of contribution to which he may be entitled.

"This opinion does not rest solely on procedural grounds. There are equitable principles which must cast a favorable light on the Plaintiff's position. To deny the Plaintiff relief which may rightfully be his would produce a result tainted with injustice, especially where the outcome was through no fault of his own.

"The aforegoing reasoning is based on the assumption that the Plaintiff is undeniably entitled to recovery. However, the Defendant's Answer contests such compensation. The issue was not heard on the merits below, and there is insufficient evidence before this Court to warrant a specific finding for the Plaintiff. Therefore, the dismissal with prejudice below will be vacated and said dismissal will be without prejudice."

It is clear to us that the opinion of the court *in banc* correctly observed that the usual practice for the judicial sale of property was not followed by the chancellor in the

present case. Maryland Rule BR6 in regard to procedure following a judicial sale provides that, subsequent to the judicial sale, the trustee is required to file a full and particular report of sale together with an affidavit of fairness of the sale and of the truth of the report. Thereafter the court passes an order *nisi*, and subsequent to a final order of ratification of the sale, refers the papers in the proceeding to the auditor pursuant to Rule 595 (in regard to Auditors) to state an account. Rule 595 provides for a hearing before the auditor after due notice of the hearing and gives the auditor the power, not only to examine the parties and witnesses upon oath, but also to require the production of all books, papers and other relevant documents where production of such writings may be compelled by a court of equity. The auditor thereafter files an account or report in lieu of an account, gives notice of its filing and the parties may file exceptions to the account or report within 15 days. If no exceptions are filed, the Clerk enters, as of course, a final order of ratification; if exceptions are duly filed, the court *then* "shall take such action as may be appropriate."

The procedure embodied in the Maryland Rules is substantially declaratory of the well-established chancery practice. See Miller, *Equity Procedure* (1897), §§ 534-556, pages 629-55.

We recently, in *Robinson v. Brodsky*, 268 Md. 12, 298 A. 2d 884 (1973), had occasion to review the law applicable to auditors as well as their powers and functions. We concluded that the auditor is not "simply a calculator and accountant for the court." We stated:

"Miller, *Equity Procedure* 632-33 (1897), says that while not in all respects the same, the office of auditor 'is to a certain extent very analogous to a master in chancery.' It is proper also, he says, 'for an auditor to suggest to the court the propriety of suspending a claim for good reasons, or reserving a fund for a particular purpose, or *any other matter* that may aid the court in the settlement of the

cause.' (Emphasis added.) We have not found anything in the later cases [1] or in Code (1966 Repl. Vol.), Art. 16 or in Maryland Rule 595 that could be said to attenuate or circumscribe the functions of the auditor to the extent urged by the appellants." (268 Md. at 24, 298 A. 2d at 890, cases in note 1 not given)

In this procedural setting we are of the opinion that counsel for Dr. Wooddy reasonably concluded that the normal procedure would be followed and that Dr. Wooddy's claims would be presented to the auditor for allowance or disallowance from any funds to which Mrs. Wooddy would be entitled as a result of the sale, with proceedings thereafter as provided in Rule 595. Hence he requested that the claims set forth in paragraphs 2 and 3 of his bill of complaint be dismissed *without prejudice*, so that this procedure could follow. Otherwise, in the posture of the case, without such a designation the dismissal of the claims at that time would operate as an adjudication on the merits. See Rule 535.

It would have been premature under the circumstances of this case for the chancellor to have proceeded to take testimony and adjudicate Dr. Wooddy's claims prior to the sale of the property, a report of sale and a final ratification of sale. If, for example, no sale were ever ratified because of a defect in title to the property or otherwise, it would have been an exercise in futility and an unnecessary waste of judicial time, to have sought to have taken testimony and made a determination of Dr. Wooddy's claims on September 18, 1972. Then too, it is possible — if not likely — that after the claims are asserted before the auditor and his account and report is filed, no exceptions would be filed, in which event the circuit court would never have to make any determination. The circuit court should have dismissed the claims of Dr. Wooddy without prejudice so that he could have his claims presented in accordance with the usual practice and the court *in banc* properly so held. This does not mean, of course, that Mrs. Wooddy is prevented from

pressing her objections to the allowance of those claims and no opinion is indicated by us in regard to the merits of those claims.

*Order of January 29, 1973 affirmed, the appellant to pay the costs.*