# CARMELA DiTOMMASI *v.* ADRIAN DiTOMMASI

[No. 703, September Term, 1974.]

*Decided June 26, 1975.*

242

The cause was argued before MORTON and GILBERT, JJ., and WILLIAM J. O'DONNELL, Associate Judge of the Court of Appeals, specially assigned.

*Townes L. Dawson* for appellant.

Submitted on brief by *Lloyd E. James, Sr.,* for appellee.

O'DONNELL, J., delivered the opinion of the Court.

On November 3, 1964 the appellee, Adrian DiTommasi, and the appellant, Carmela DiTommasi, then husband and wife, acquired, as tenants by the entireties, for their domicile, the real property located at 1902 Callaway Street in Hillcrest Heights, Prince George's County, Maryland.

Following irreconcilable matrimonial differences the appellee vacated the home on or about November 23, 1966. When, on June 5, 1973, the parties were divorced *a vinculo matrimonii* by a decree of the Circuit Court for Prince George's County, the estate that they held by the entireties was converted into a tenancy in common. *See Meyers v. East End Loan & Savings Ass'n,* 139 Md. 607, 612, 116 A. 453, 455 (1922); *Reed v. Reed,* 109 Md. 690, 696, 72 A. 414, 416 (1909).

Unable to reach an agreement as to the disposition of the property, where the appellant continued to reside and since concededly it could not be partitioned, the appellee filed a

bill of complaint in the Circuit Court for Prince George's County praying that that court decree the sale of the premises and divide the proceeds among the parties according to their respective rights. *See* Maryland Code (1974), Real Property Article § 14-107 (a). American Federal Savings and Loan Association, to which the parties were indebted under a deed of trust, was joined as a party in accordance with the provisions of § 14-107 (d).

Opposing such a sale, the appellant defended the action by asserting that her former spouse had made an oral gift of the property to her, was estopped from asserting his interest as a tenant in common therein and that she was nonetheless entitled to reimbursement from him not only for the contribution she made toward the purchase, but for those payments subsequently made by her on account of the interest and principal due American Federal, for taxes, insurance and for improvements made.

Following an evidentiary hearing, the chancellor (Ralph W. Powers, C. J.) filed an opinion in which he found that the appellant had not met her burden, by a preponderance of the evidence, of establishing a donative intent on the part of the appellee; that the complainant was not estopped to assert his interest in the property; and that although he was responsible for contribution for certain specified improvements made to the property by the appellant, she was not entitled to reimbursement of the moneys she had contributed toward the purchase of the property, nor for the payments she made by way of taxes, insurance and principal and interest under the deed of trust. From a decree ordering the sale of the property and appointing cotrustees to make such sale, and from rulings limiting the amounts to be credited to the appellant by the auditor in his statement of account to be filed with the court, the appellant appealed, contending as she had in the trial court, that: (a) the appellee had made an oral gift of the house to her; (b) that he was estopped from asserting his interest in the title to the property; and (c) that the trial court erroneously limited the items for which she was entitled to contribution from him.

*(a) and (b)*

Since the issues of whether the appellee made a parol gift of his interest in the property and was estopped from asserting his title thereto are so inexorably here intertwined we shall discuss them together.

Carmela DiTommasi testified that when her former spouse departed the premises on November 22, 1966 — as well as on several later occasions when he returned thereto to recoup some of his personal effects — he had told her that "He didn't want the house, that she could keep it," and that "you can have the house." She dramatically recalled one occasion, when the appellee had had her arrested (apparently for assault) and while she was being escorted by the police, he told her: " 'You stole the house and I don't want it.' " She also testified that she had earlier given him a boat, that he told her " 'You can have the boat too' " and that " 'He says he give it to me, but he take it [away].' " This evidence was buttressed by the testimony of two of the appellant's daughters (Adrian's stepchildren), both of whom resided at the premises at the time of separation, that the appellee, following an argument "around Thanksgiving [1966]," stated that "He didn't want anything to do with the house it belonged to [their] mother." One of the step-daughters testified that this disavowal of any interest in the property was repeated on an occasion when her step-father returned to claim some personal belongings.

A neighbor and confidante of the appellant — who spoke no English — testified through an interpreter that there had been repeated arguments and statements between the parties concerning the house and that on one such occasion, several days after Thanksgiving, 1966, she heard Adrian tell Carmela that "He didn't want anything to do with the house." [1]

A mutual friend of the principals, since 1960, was the fifth witness to give cumulative testimony on this point. She testified that she had overheard an argument, in September

---

1. The transcript does not disclose whether this declaration by Adrian was in English or Italian.

1966, when Adrian stated, " 'I don't give a damn . . . you can have this house . . . it don't belong to me.' " The witness conceded, however, when asked if she knew that Mr. and Mrs. DiTommasi had separated, that "I don't know too much about their business."

Adrian DiTommasi contradicted the appellant's witnesses at virtually "every turn"; he emphatically denied ever having made such statements concerning the disposition of the property, contended that he had returned to the premises only twice — on which occasions he admitted himself with his own key — and not on five or six occasions as described by one of the stepdaughters and that on one of his visits, approximately ten days after November 23, 1966, the appellant had had him arrested for nonsupport.

From this plethora of parol evidence versus the appellee's uncorroborated denial and, specifying purported discrepancies in the appellee's testimony, the appellant argues that the chancellor erroneously found that there had been no gift of Adrian DiTommasi's interest in the property.

Judge Powers, in finding that the appellant had not sustained her burden, by a preponderance of the evidence, of establishing a donative intent on the part of Adrian DiTommasi, pointed out that in order to make a valid gift *inter vivos*, there must be a clear intention on the part of the donor to transfer gratuitously title to the property, and also a delivery by the donor and an acceptance by the donee, and that it is essential that the transfer of both possession and title shall be absolute and shall go into immediate effect. *See Rogers v. Rogers*, 271 Md. 603, 319 A. 2d 119 (1974); *Geisler v. Eminizer*, 240 Md. 72, 212 A. 2d 734 (1965); *Berman v. Leckner*, 193 Md. 177, 66 A. 2d 392 (1949); *First Nat'l Bk. v. Thomas*, 151 Md. 241, 134 A. 210 (1926). *See also Urquhart v. Alexander & Alexander, Inc.*, 218 Md. 405, 414-15, 147 A. 2d 213, 219 (1958), cited by the chancellor, that evidence of a gift, although it may be proved by parol, "the evidence thereof must be clear and convincing."

Her argument as to this facet of the case overlooks the fact that the chancellor had an opportunity to observe the demeanor of the witnesses, to judge their credibility and to

pass upon the weight to be given their testimony. *See* Maryland Rule 1086; *Colburn v. Colburn,* 15 Md. App. 503, 513, 292 A. 2d 121, 127 (1972).

Where the facts or inferences therefrom, or both, are in dispute, such questions are to be determined by the trier of fact. In such instances, "involving the resolution or questions of fact, it is not the province of this Court to weigh and evaluate the conflicting evidence to determine its comparative value; we decide only whether there is any evidence legally sufficient to support the finding of the trier of facts — in this instance the court sitting without a jury — and in making this decision we assume the truth of all the evidence, and of all favorable inferences fairly deducible therefrom tending to support the factual conclusion of the court." *Carling Brewing Co. v. Belzner,* 15 Md. App. 406, 411-12, 291 A. 2d 175, 179 (1972), citing *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 197, 117 A. 2d 577, 580 (1955). Nor can we substitute our judgment for that of the lower court on its findings of fact, but can only determine whether those findings are clearly erroneous in the light of the total evidence. *Colburn v. Colburn, supra.*

As the trial court pointed out, his conclusion upon the testimony offered was supported by the bill of complaint [2] filed in April 1967 by Carmela DiTommasi — seven months after the purported gift — wherein she listed the premises as the "common property of the parties."

We conclude that Judge Powers was not clearly erroneous in finding an absence of donative intent where the testimony of both the apellant and appellee disclosed that he, in visiting the premises, had admitted himself with his own key, without any evidence of relinquishment of his right to possession, when coupled with the appellant's testimony concerning the gift of a boat, and from the very nature of this purported "gratuitous transaction" where the references to the house only arose at the zenith of a series of stormy and violent domestic arguments. In order for such intent to

---

**2.** The bill of complaint to which the trial court made reference was not included in the Record; we can only surmise that it was a suit instituted by her for a divorce *a mensa et thoro.*

be proven, it must be shown from the evidence that the donor *clearly* and *unmistakably* intended *permanently* to relinquish all interest in, and all control over the *res* which is the subject of the gift. *See Schilling v. Waller*, 243 Md. 271 276-77, 220 A.2d 580, 583 (1966), and cases therein cited.

Recognizing that no corporeal estate or freehold interest in land may be assigned, granted or surrendered unless it be in writing signed by the party so granting, assigning or surrendering it, *see Prevas v. Gottlieb*, 229 Md. 188, 193, 182 A. 2d 489, 492 (1962); *see also* Maryland Code (1974) Real Property Article, § 5-103, the appellant nonetheless argues that equity will protect a parol gift of land if accompanied by possession and the donee, induced by the promise to give it, has made valuable improvements on the property by the expenditure of labor or money. She contends — presupposing the validity of a parol gift from her former spouse — that she entered into possession of the premises and in reliance upon the promise, expended considerable sums by way of improving it and that as a result thereof the appellee is estopped from asserting his interest as a tenant in common in the realty.

The chancellor, in answering in the negative as to whether the appellee was estopped, pointed out that the doctrine of equitable estoppel " 'will not be applied unless it is shown that the person sought to be estopped has been guilty of some wrongful or unconscientious conduct upon which another relied and was misled to his injury.' " *Alvey v. Alvey*, 220 Md. 571, 576, 155 A. 2d 491, 493 (1959). Finding from the evidence that there was no showing "that the defendant's [appellant's] payment of obligations on the property were induced by the plaintiff [appellee] or that the amount of reduction of plaintiff's [appellee's] principal obligation [under the deed of trust] was even as much as he would be entitled to as his share of the rent," found the appellant's reliance upon the holdings in *Machovec v. Shipley*, 171 Md. 339, 189 A. 223 (1937), to be misplaced.

As we see it, the holdings by the Court of Appeals in *Withers v. Douglas*, 206 Md. 141, 110 A. 2d 513 (1955), are completely dispositive of this issue.

In *Withers* the appellant and appellee had lived together as husband and wife, "without benefit of clergy," during which time, as co-owners, they purchased a home, taking title as tenants by the entireties and executing a mortgage to a building and loan association.[3] In early 1950 Withers terminated the relationship and left the home; the appellee continued to reside there with the children. When he left the appellee paid on the principal of the mortgage, as well as the interest, taxes and ground rent. She repeatedly hounded him for money until he wrote three notes, the first of which said in part, "You will better sell the house and get the money for it. I will sign it over to you." A year later he again wrote, "I am paying no more the house is yours — do what you want with it." A month after that he wrote for the third time, "Here is 50 dollars I cant give anymore — the house is yours so Please dont Bother me — I pay no more." Notwithstanding such declarations, he continued to forward substantial sums of money.

Several months after the first note was written, in 1951, the appellee's mother spent $200 to have the walls of the house "damp-proofed"; the appellee had some wallpapering done.

When the appellant filed a bill for the sale of the property and after a decree had been passed, the appellee, with leave of court, filed a cross-bill alleging that the appellant " 'had abandoned and voluntarily surrendered and given to . . . [her] any interest he had in said property.' " The chancellor determined there had been a valid, though informal, gift of his interest in the real estate by one co-owner to the other, granted the relief prayed in the cross-bill and dismissed Withers' original bill. He appealed.

In reversing the lower court the Court of Appeals remanded the case so that a sale could be made pursuant to the original bill of complaint and held that there was no showing that the appellee's possession [the same as that here asserted by the appellant] was referable to anything

---

**3.** The Court held that the illicit relationship would not defeat the appellant's right to require a sale and that it was not necessary to decide whether he was a joint tenant or a tenant in common.

except her status as a co-owner and that there was no evidence that she had changed her position, or was put to a disadvantage so that it would be inequitable, to the point of fraud, to permit appellant to deny completion of the gift.

Judge Hammond (later Chief Judge) of the Court of Appeals, for that Court, stated:

> "It is true that equity protects a parol gift of land if accompanied by possession and the donee, induced by the promise to give it, has made valuable improvements on property by the expenditure of labor or money. The principle involved and the tests applicable are similar to those which underlie and control the doctrine of part performance in cases of contracts to sell land which do not meet the requirements of the statute of frauds. *Hardesty v. Richardson*, 44 Md. 617, 624; *Miller, Equity Procedure*, Sec. 671, p. 777; *Restatement, Restitution*, Sec. 164, p. 666; *Pomeroy, Specific Performance of Contracts*, 3rd Ed., Sec. 130. The tests as to part performance require that the *proof must be clear, definite and conclusive, both as to the fact of the gift and as to the acts done, as well as that the acts had been done on the strength of the gift only*, so that any attempt by the donor to avoid the gift would be inequitable to the point of fraud. *Hardesty v. Richardson, supra; Soehnlein v. Pumphrey*, 183 Md. 334, 336; *Polianski v. Polianski*, 138 Md. 598; *Whitaker v. McDaniel*, 113 Md. 388; *Chamberlain v. Preston*, 170 Md. 1; *Jaworski v. Jaworski*, 202 Md. 1. See also *Reinhardt v. Fleming* (Wash.), 140 P. 2d 504; and the annotation in 155 A.L.R. 73, 76." (Emphasis supplied.) 206 Md. at 144-45, 110 A. 2d at 515-16.

After pointing out that "[t]he tests as to whether the acts of part performance are referrable only to the contract or gift" were discussed in *Semmes v. Worthington*, 38 Md. 298, 327 (1873), where the Court said: " 'The act relied on as part performance must, in itself furnish evidence of the identity

of the contract; and it is not enough that it is evidence of some agreement, but it *must relate to and be unequivocal evidence of the particular agreement charged in the bill.'* [citations omitted]" (emphasis in original), he continued for the Court:

"Another such test is applied in *Rosenthal v. Freeburger*, 26 Md. 75, 80, — that continuance of possession, taken before the contract or gift was made, is usually insufficient as part performance. In that opinion, the Court, speaking of possession of a tenant holding over, adopted the following language: 'This is a *mere continuance of the character which he all along filled, and any act which may be thus referred to a title distinct from the agreement cannot be considered as operating to take the case out of the statute.'* *Howard v. Carpenter*, 11 Md. 259, 276; *Billingslea v. Ward*, 33 Md. 48, 54; *Boehm v. Boehm*, 182 Md. 254, 265, *supra*."

\* \* \*

"*Pomeroy*, in the work cited [Specific Performance of Contracts (3d ed.) (1926)], says in Sec. 121 at p. 305, that possession, to be sufficient, must: '* * * in short, indicate the commencement of a new interest or estate * * *. The rule concerning exclusive possession applies with special force to *tenants in common*. Where a *plaintiff claims* as purchaser of land to *the possession of which he and others are entitled as tenants in common, or joint tenants, no mere possession by him can avail as a part performance*; no possession can suffice which does not show his individual right to the exclusion of the other co-tenants. The reason of this is obvious, and results from the nature of such co-ownership. *Each tenant is entitled to the possession of the common estate; the possession of one is that of all the others.'* See annotation in 101 A.L.R. 923, at pp. 1037-1041. See also *Delnero v. Serra* (N.J.), 63 A. 2d

896; *Brotman v. Brotman* (Pa.), 46 A. 2d 175; *In re Yarnall's Estate* (Pa.), 103 A. 2d 753." (Emphasis supplied.) 206 Md. at 145-46, 110 A. 2d at 516.

As in *Withers, supra,* where the appellee had lived in the property continuously since her "mate" had left her, the appellant here has continuously used the premises as her home since her spouse left on November 23, 1966, and what the Court there stated concerning the appellee's possession of the premises seems here particularly apposite. The Court said:

"There is nothing to show, at any time after the receipt of the notes, *that her possession was referrable to anything except her status as co-owner.* There is no evidence that she changed her position or was put to a disadvantage, by reason of the notes, so that it would be inequitable to the point of fraud, to permit the appellant to deny completion of the gift. If we assume that the notes which the appellant wrote were intended to constitute a present gift, rather than suggesting, as might be inferred from some of their language, a future donative intent, we think that under the tests of the cases, appellee has fallen far short of *relating her possession solely to the gift.* Rather, in the language of the cases, her possession certainly was not unequivocal evidence of the gift alleged in her cross-bill." (Emphasis supplied.) 206 Md. at 146-47, 110 A. 2d at 516-17.

The Court was further of the view that the expenditure incurred for water-proofing was "more readily referrable to her status as a co-owner and an occupant of the property that it is as a donee of a part interest"; and that it might be inferred "that the expenditure would not have been made if the property were not to have been lived in indefinitely." 206 Md. at 147, 110 A. 2d at 517.

*See also Boehm v. Boehm,* 182 Md. 254, 265, 34 A. 2d 447, 452 (1943), where parents, cotenants with their son and daughter-in-law, contended that their son and his wife had

entered into an oral agreement to sell their interest to them in the farm and that they had paid a portion of the selling price, had resided on the farm and had paid all taxes and interest on a mortgage. In concluding that the parol contract was unenforceable under the Statute of Frauds, the Court held the part payment of the purchase price, together with mere continuance of possession by the purchasers were not acts of part performance so as to remove the bar of the statute, the Court stating:

> "When possession is assumed as an act of part performance it must appear that the land has been delivered and the possession taken in pursuance of the contract and so retained and continued. The possession must be referable to the contract. *Mere occupancy, not shown to be in pursuance of the contract, does not constitute part performance. Miller's Equity Procedure,* Sec. 707; *Semmes v. Worthington,* 38 Md. 298." (Emphasis supplied.) 182 Md. at 265, 34 A. 2d at 452.

Assuming, *arguendo,* that the appellant had met her burden of proof in establishing a donative intent on the part of Adrian DiTommasi, it is nonetheless clear that the appellant's continued possession of the premises was a possession to which she was entitled of the common estate held by the parties and was not a possession which she undertook to enter into in reliance upon the alleged gift; there is no showing that "her possession was referrable to anything except her status as a co-owner." Indeed, it appears, as it did in *Withers v. Douglas, supra,* that the improvements she made to the premises — by way of the installation of central air conditioning, storm doors and windows and a new bathroom sink — are all "more readily referrable to her status as a co-owner and an occupant of the property than [to that] . . . as a donee of a part interest." These expenditures appear to have been made by way of "creature comforts" in connection with her continued occupancy.

The appellant's reliance upon *Masters v. Masters,* 200 Md.

318, 89 A. 2d 576 (1952), *Shives v. Borgman*, 194 Md. 29, 69 A. 2d 802 (1949), *Soehnlein v. Pumphrey*, 183 Md. 334, 37 A. 2d 843 (1944), *Buckner v. Jones*, 159 Md. 679, 152 A. 515 (1930), *Gorsuch v. Kollock*, 139 Md. 462, 115 A. 779 (1921), *Whitaker v. McDaniel*, 113 Md. 388, 78 A. 1 (1910), *Loney v. Loney*, 86 Md. 652, 38 A. 1071 (1898), *Hardesty v. Richardson*, 44 Md. 617 (1876) and *Moale v. Buchanan*, 11 G & J 314 (1840), is misplaced since in none of those cases was the grantee or donee a cotenant of the property.

Nor are the holdings in *Cooper v. Davis*, 226 Md. 371, 174 A. 2d 144 (1961), or in *Hohman v. Hohman*, 164 Md. 594, 165 A. 812 (1933), here applicable. In *Cooper v. Davis, supra,* the chancellor found a valid parol agreement to divide a 44-acre parcel of land owned by the parties as tenants in common into two 22-acre tracts, where each co-tenant took and maintained exclusive possession of his separate acreage. In *Hohman v. Hohman, supra,* the Court upheld the validity of an agreement between beneficiaries under a will to postpone a division of the estate they inherited so that the executors might exercise the power of sale given them under the will, and where the appellees, relying upon the agreement, had foregone rights to partition, to income to be derived from the property and had jointly, with the appellants, permitted sales of the property for their joint account.

We concur in the conclusion reached by the chancellor that the appellee was not estopped, upon the facts in this case, from asserting his interest in the title to the property.

*(c)*

Appellant's claim for contribution from the appellee falls into three categories: (i) the amount paid by her at the time of settlement for the purchase of the property, (ii) the moneys paid by her for taxes, insurance and to defray the principal and interest due American Federal Savings and Loan Association on the deed of trust, and (iii) the funds expended by her by way of improvements and maintenance of 1902 Callaway Street.

(i) It appears that at the time of settlement for the

purchase of the premises a $15,000 down payment was made by the parties comprised of a $10,000 check, payable to "Carmela Culp" and representing a withdrawal from a personal savings account, a $4,000 check, representing a withdrawal from a joint savings account, with the remaining $1,000 being "earnest money." A loan from the American Federal Savings and Loan Association, secured by a deed of trust, in the amount of $12,950 represented the balance.

The appellant's contention that the chancellor was in error in failing to charge the appellee with the amount of $10,000 she contributed toward the purchase of the property is without merit. Where husband and wife acquire property as tenants by the entireties and the wife contributes a major portion of the purchase price, in legal effect and in the absence of proof that her donation was not her voluntary act, the transaction on its face amounts to an absolute gift. *Anderson v. Anderson*, 215 Md. 483, 488-89, 138 A. 2d 880, 883 (1958). *See also Whitelock v. Whitelock*, 156 Md. 115, 120, 143 A. 712, 714 (1928); *Reed v. Reed*, 109 Md. 690, 72 A. 414 (1909). The record before us is devoid of any evidence to suggest that when the appellant donated $10,000 toward the purchase of the property it was not her voluntary act.

(ii) In rejecting the appellant's contention that she was entitled to contribution from her former spouse on account of the payments made by her for taxes, insurance and interest and principal due under the deed of trust, the chancellor recognized the general rule stated in *Pino v. Clay*, 251 Md. 454, 456-57, 248 A. 2d 101, 102-03 (1968), that "when one tenant pays a mortgage or other encumbrance upon the common property, he is entitled to contribution from his co-tenants to the extent to which he has paid their share, and is entitled to an equitable lien for the amount due him." *See also Withers v. Douglas, supra*, 206 Md. at 148, 110 A. 2d at 517. Yet, citing *Meyers v. East End Loan & Savings Ass'n*, *supra*, for the premise that it is the duty of courts of equity "to adapt their methods to the exigencies of justice (and) to protect the equitable rights of those concerned," the chancellor treated those payments she made to be "in the

256

nature of monthly rental payments" which "would have been incurred were she to live anywhere, while similar payments were presumably being incurred elsewhere by the plaintiff [appellee]."

As we see it, this reliance upon the holdings in *Meyers, supra*, is misplaced; indeed, that case is authority for a conclusion opposite that reached. In *Meyers*, husband and wife entered into an installment contract with the appellee association to purchase a dwelling house; the husband paid $105 when the contract was executed and although the parties, four years later, were divorced, the husband paid the regular installments both before and after the divorce. Several weeks after the entry of the divorce decree the wife filed a bill for the sale of the property in lieu of partition. Although the lower court dismissed her bill, a supplemental decree was entered finding that Mrs. Meyers was entitled to one-half the total sum which her husband had paid under the agreement up to the date of the divorce. The appellee, Meyers, contended that subsequent to the divorce his wife was required to pay one-half of the amounts paid on the installment contract and that "without having paid or offered to pay any part of the same, she is not entitled to participate in the benefit of the payments made [by him] since the divorce," or to a decree for the sale of the property.

In reversing and in holding that the appellant was entitled to a decree for the sale of the property the Court of Appeals stated:

"In the case now under consideration the amount paid by George W. Meyers on account of the property *prior to the decree of divorce* must be regarded as a gift to his wife to the extent of her interest in the property. As the result of the divorce, they each became entitled as tenant in common to an undivided one-half interest in the property, and liable for one-half of all payments that thereafter became due under the terms of the contract of purchase with the association. To the extent that such payments, *made since the divorce*

have been made by George W. Meyers, he is entitled to contribution from the appellant. But as it is not claimed that the amount due George W. Meyers by the appellant is more than the value of her one-half interest in the property, she is entitled to a decree for a sale of the property, and in the distribution of the proceeds the amount ascertained to be due by her to George W. Meyers should be allowed him out of her share." (Emphasis supplied.) 139 Md. at 614, 116 A. at 456.

In *Withers v. Douglas, supra,* in remanding the case, the Court stated:

"A co-tenant may be entitled to contribution from other co-tenants for monies paid for the discharge of liens or encumbrances, and, in some instances, for the expense incurred in preservation of the property. *It may be that the appellee would be entitled to contribution from the appellant for some or all of the money expended by her after he left, according to the facts presented."* (Emphasis supplied.) 206 Md. at 148, 110 A. 2d at 517.

In *Hogan v. McMahon,* 115 Md. 195, 80 A. 695 (1911), the appellant filed a bill seeking the sale of a parcel of ground held with the appellee as tenants in common. The appellee denied that the plaintiff was entitled to relief, asserting that she had expended moneys for improvements to the property, mortgage payments and taxes, exceeding the amount claimed in the bill of complaint, without any contribution from the plaintiff. Both parties had lived on the property until the plaintiff left of his own accord — there was no evidence that he had been ousted from possession by the defendant. Upon those facts the Court of Appeals held "[T]here can be no doubt that the appellee is entitled to contribution by the appellant for liens and incumbrances paid by her since they became tenants in common. 17 *Am. and Eng. Ency. of Law,* 685; 7 Ibid. 353, and, as shown by the last cited authority, that statement includes mortgages, taxes and ground-rent." The holdings in *Hogan* were

followed in *Pino v. Clay, supra,* where it was further pointed out that the "equity of the non-contributing co-tenants was increased by these payments . . . the final result of both the curtailment payments and the monthly payments was to increase the co-tenants' *aliquot* share in the property. Equity will not allow the unjust enrichment of the appellees at the appellants' expense." 251 Md. at 457, 248 A. 2d at 103. *See also* Restatement of Restitution § 105 (1937), cited in *Pino.*

In *Schilbach v. Schilbach,* 171 Md. 405, 189 A. 432 (1937), the executrix and the son of a deceased tenant by the entireties sought to charge the other tenant, the surviving husband, for certain expenses, including mortgage interest paid by, and on behalf of the decedent during her lifetime. Although a demurrer to the bill was sustained because of a misjoinder of plaintiffs, the Court, without prejudice, upheld the right to seek enforcement of the claims in a properly filed suit.

The Court, after observing that a tenancy by the entireties is essentially a joint tenancy and except for the fact that it cannot be defeated during the lives of a husband and wife, without the joint action of both, the same rules of law apply to it as to any other co-tenancy, pointed out that in *Hogan v. McMahon, supra,* a cotenant was held entitled to contribution "for necessary repairs and improvements, which add a permanent value to the estate, made and paid by a cotenant with the assent of the other, and to subrogation to the rights of a mortgagee where one cotenant pays off a mortgage on the common property," and stated:

> "Recourse can only be had against the property for such claims as the wife might make if living, and then for payments made on account of liens, incumbrances, and permanent improvements at her request, the assumption being made on the allegations of the bill that nothing was done with the assent of the defendant. . . ." 171 Md. at 409, 189 A. at 434.

The holdings in *Schilbach* make it clear that the rule of

law applied in *Hogan v. McMahon, supra,* for contribution between tenants in common "is equally applicable to tenants by the entireties." *See Colburn v. Colburn,* 265 Md. 468, 475, 290 A. 2d 480, 484 (1972). *See also Lingo v. Lingo,* 267 Md. 707, 713, 299 A. 2d 11, 14 (1973).

In *Colburn, supra,* the Court, pointing out that the wife "possesses an interest in the property which is protected from loss by the payment of taxes and insurance premiums," held that where the husband paid taxes and insurance premiums on the home, exclusively occupied by him but held as tenants by the entireties, the wife as a co-owner was required to contribute to such expenditures even though without an agreement on her part to pay, the Court stating that: "We do not understand *Hogan,* or the prevailing majority view, to require that a co-owner consent to the payment of taxes or reasonable insurance premiums before an obligation to contribute to the cost thereof attaches."

In *Lingo v. Lingo, supra,* the Court held that a spouse who makes contributions by way of loan payments to avoid loss of property held as tenants by the entireties, through foreclosure was entitled to reimbursement of his contribution upon the sale of the property where the parties were actually "joint venturers" in making improvements to the property and where they were separated when the advance was made, the Court stating that: "Although *Colburn* dealt with a dispute over taxes and insurance premiums, our reasoning there in pointing out that the property was 'protected from loss by the payment of the taxes and insurance premiums,' is equally valid in the case of the loan payment here." 267 Md. at 713, 299 A. 2d at 14. After analyzing the holdings in *Hogan, Pino, Schilbach* and *Colburn,* the Court stated: "We think that the four last-mentioned authorities, taken together support our conclusion that the gift presumption does not apply to the particular circumstances of this case."

Lastly in *Aiello v. Aiello,* 268 Md. 513, 518-19, 302 A. 2d 189, 192 (1973), the Court of Appeals stated:

"Generally, when one of two or more co-owners of

an equity of redemption satisfies the mortgage debt
or other encumbrance upon their common property
and that payment inures to the benefit of other
owners, the payor is entitled to receive contribution
from his co-tenants to the extent he has paid their
share. This is so unless, as between any of the
co-tenants, he alone or with some but not all the
others, has primary responsibility to satisfy the
obligation. (Citations omitted.)"

In *Aiello* the Court, in citing *Meyers v. East End Loan &
Savings Ass'n, supra,* stated: " '[C]ourts of equity do not
hesitate to adapt their methods to the exigencies of justice or
to protect the equitable rights of those concerned' and
compel the ultimate payment of a debt by those who in
equity and good conscience ought to pay it." 268 Md. at 519,
302 A. 2d at 192.

A distillation of the holdings in all these cases convinces
us that the chancellor incorrectly denied unto the appellant
any contribution from her former spouse in connection with
the payment she made for taxes, insurance premiums and
on account of their joint obligation under the deed of trust
subsequent to the date of the divorce decree whch converted
their tenancy by the entireties into a tenancy in common.
Since the right of contribution "is equally applicable to
tenants by the entireties," it would further appear that the
appellant — upon evidence overcoming a presumption of a
gift by her — may well be entitled to contribution from the
appellee as well "for some or all the money expended by her
after he left" and during the interval, before the divorce
decree, while they remained tenants by the entireties.

Although from the evidence concerning their matrimonial
discord, the animosity existing between them, the
circumstances which precipitated the appellee's departure
from the premises and his subsequent arrest for nonsupport,
it might be inferred that those payments made by the
appellant between November 23, 1966 (when he left) and
June 5, 1973 (when they were divorced) were not intended by
her to be a gift to him, this issue was not developed in the

trial court and the record here is devoid of any testimony to permit us to resolve it.

When the chancellor, in denying her contribution, equated these payments by the appellant with "monthly rental payments" which "would have been incurred by [her] . . . were she to live anywhere," we think, absent any evidence in this record in connection with whether or not the appellee did make any payments for the support of the appellant or made payments unto her from which she was expected to keep current their joint obligations under the deed of trust, that he, although undertaking "to protect the equitable rights of those concerned," may have failed to "compel the ultimate payment of a debt by [him] who in equity and good conscience ought to pay it." *See Aiello v. Aiello, supra.*

(iii) The chancellor, stating that "in the interest of equity the Court finds it necessary to deviate from the traditional property concept that in the absence of a co-tenant's agreement to pay, another co-tenant has no right to contribution for repairs, improvements or carrying charges," found that it would be an "injustice to allow the plaintiff [appellee] to profit, as he will at the time of sale, from the permanent improvements made by the defendant [appellant] to the property," ruled that in the account to be stated by the auditor the appellant should receive credit for the cost of the installation of a central air conditioning unit ($1,400), the installation of storm doors and windows ($300), the installation of a new (bathroom) sink ($90) and $375 for the "last painting job" (one-half of the total of $750 claimed by the appellant for twice having painted the house.) Additionally, he ordered the appellant charged with the cost ($80) of replacing window glass which he had broken. The chancellor rejected the appellant's claim of $1,278.50 for lawn care over a seven and one-half year period (at $65 per year) by finding that such expenditures were "for maintenance rather than [for] permanent improvements to the property."

Although it is difficult to fathom what the appellant's contentions really are in this regard, other than she might feel that "she did not get enough," the appellee — who took

no cross-appeal — states affirmatively that he "agrees with the opinion of the lower court with respect to the appellant's right to reimbursement for those items set forth in the opinion and concurs with the reasons given by the court."

In *Woodcock v. Pope*, 154 Md. 135, 140 A. 76 (1928), the Court held:

> "[T]he general rule is that one cotenant is entitled to contribution from another for necessary repairs and improvements when they were made with the assent of the other, or the repairs were necessary for the preservation of the building or other erection on the land, and were done by one cotenant *after request of and refusal by the other cotenant, Hogan v. McMahon,* 115 Md. 195, 201, 202; *Bonaparte v. Thayer,* 95 Md. 548, 587; *Williams v. Harlan,* 88 Md. 1; *Tiffany on Real Property* (2nd Ed.), sec. 200, p. 689; *Israel v. Israel,* 30 Md. 120, 128; *Venable's Real Property,* p. 102. . . ." (Emphasis supplied.) 154 Md. at 147, 140 A. at 81.

In *Colburn v. Colburn, supra,* the husband contended that the chancellor erred in not allowing him a deduction for repairs made to one of the rental properties held by him with his wife as tenants by the entireties. The Court of Appeals in affirming the chancellor in this regard, finding that the repairs were admittedly made "without prior consultation" with Mrs. Colburn, stated:

> "We affirm the ruling of *Woodcock v. Pope* for it is our belief that factors such as the expediency of making necessary repairs, the possible obligations of third parties to make repairs and, indeed, the necessity of the repairs themselves are proper objects of consideration for all of the joint owners. Mr. Colburn's action in not informing his wife of the performance of the repairs, deprived her of the opportunity to make these determinations prior to the money being expended; consequently, the refusal of the court to deduct these amounts from

the proceeds of the properties was proper." 265 Md. at 477, 290 A. 2d at 485.

We have no difficulty in concluding, as did the chancellor, that the claim for lawn care cannot be brought within the ambit of "necessary repairs and improvements," and we concur in the ruling that the appellee could not be subjected to contribution for that item.

There is no reference whatsoever in the record here before us that the appellant made any request upon the appellee — or that there was any refusal by him in connection with the expenditure for the improvements she undertook to add to the residence which the parties continued to own. Indeed, under the holdings in *Woodcock v. Pope, supra,* and in *Colburn v. Colburn, supra,* the "deviation" by the chancellor "from the traditional property concept" appears to have been erroneous and the appellant appears to have been granted contributions beyond that to which, under the law, she may have been entitled. Even though the chancellor's ruling appears to be contrary to the established law, since the appellee does not challenge the correctness of these rulings we shall consider them — from the standpoint of the improvements made — as settled. We recognize, as did the chancellor, that the improvements made to the premises by the appellant would certainly tend to enhance the market value of the premises at the public sale to be made pursuant to the decree, and not to charge the appellee for contributions therefor would — as he apparently recognizes — permit him to realize a profit from the sale with a resultant injustice to the appellant.

Although we have set forth — at much too great a length — our views concerning the conclusions reached by the chancellor in connection with the appellant's asserted rights to contribution, those rulings were set forth in his written opinion and were never formalized by being incorporated in the decree which was entered or in any separate order. The reported cases are legion which hold that an appeal in equity will lie only from a written order or decree and that such appeals are not allowable from the

comments made by, or the opinion of the lower court, *see*
*Alberstadt v. Alberstadt*, 257 Md. 552, 553, 263 A. 2d 535,
535-36 (1970), *McCann v. McGinnis*, 257 Md. 499, 505, 263
A. 2d 536, 539 (1970), *Millison v. Citizens Nat'l Bk. of*
*Southern Maryland*, 256 Md. 431, 436, 260 A. 2d 324, 327
(1970), *Mattingly v. Houston*, 252 Md. 590, 593, 250 A. 2d
633, 634 (1969), hence these allegations of error by the
appellant are technically not properly before us since counsel
did not submit an order incorporating the rulings by
the chancellor. Indeed, under the holdings in *Wooddy v.*
*Wooddy*, 270 Md. 23, 30, 309 A. 2d 754, 758 (1973), it
appears that these rulings by the chancellor may have
been premature. *See also* Maryland Rule 595.

We have undertaken, however, to express what we
consider to be the correct principles of law applicable to
these contentions by the appellant concerning her right of
contribution since, upon ratification of the report of sale
made by the cotrustees under the decree, the proceedings
will be referred, pursuant to Maryland Rule BR6, to the
auditor for the statement of an account and for such a
hearing as may be required in accordance with the
provisions of Maryland Rule 595, and without our views
having been expressed on the issue of contribution for loan
payments, taxes and insurance, the ruling made by the
chancellor in this particular might have been considered as
binding and been applied by the auditor. *See Wooddy v.*
*Wooddy, supra*. Patently, to dismiss so much of the
appellant's appeal "without an expression of the views of the
court" on this point would then result in another appeal. *See*
*Langhirt v. Hicks*, 153 Md. 31, 34, 137 A. 482, 483 (1927),
where the Court stated: "We shall therefore state what our
decision would be if the case were properly before us." *See*
*also Hogan v. McMahon, supra*, where the Court expressed
its views on the subject "to avoid further litigation."

Similar procedures were invoked by the Court of Appeals
in *McCann v. McGinnis, supra; Millison v. Citizens Nat'l Bk.*,
*supra*, and *Bell v. Shifflett*, 249 Md. 104, 238 A. 2d 533 (1968).

It appears further that these questions of law were
presented to the lower court and that a decision thereon by

this Court is both necessary and desirable for the guidance of the lower court, upon remand, and to avoid the expense and delay of another appeal. *See* Rule 1085.

We shall affirm the decree ordering the sale of the property owned by the appellant and appellee and appointing trustees to make that sale, but, because of what we see to be the erroneous rulings by the chancellor concerning a disallowance unto the appellant for any contribution from the appellee for the payments she made on account of taxes, insurance premiums and the principal and interest due and owing by the parties under the deed of trust, we shall order the case remanded for the taking of testimony before the auditor on that issue, in accordance with the views we have expressed.

*Decree for sale of property affirmed; case remanded to the Circuit Court for Prince George's County for further proceedings in accordance with the views expressed herein; costs to be divided between the appellant and appellee.*